UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| Peter Parnell, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> School Board of Lake County, Florida, *et al.*, <br><br> Defendants. | Case No. 5:23-cv-381 (BJD) (PRL) |

**PLAINTIFFS' OPPOSITION TO THE STATE DEFENDANTS'
TIME-SENSITIVE MOTION TO TRANSFER
PURSUANT TO LOCAL RULE 1.07**

Plaintiffs Justin Richardson and Peter Parnell (together, the "Authors" or "Author Plaintiffs") and Plaintiffs E.D.B., Z.T., E.T., D.S., E.S., and M.H. (together, the "Student Plaintiffs," and, together with the Author Plaintiffs, the "Plaintiffs") hereby oppose the State Defendants' Time-Sensitive Motion to Transfer Pursuant to Local Rule 1.07, ECF No. 13.

**PRELIMINARY STATEMENT**

There is no reason for this case to be transferred to the court overseeing *Cousins v. Grady*, No. 6:22-cv-1312 (M.D. Fla.). The relief Plaintiffs seek here is discrete, urgent, and is directly traceable to the Lake County Defendants'

restriction of *And Tango Makes Three* ("*Tango*") pursuant to H.B. 1557. Plaintiffs bring an *as-applied* challenge to H.B. 1557 specific to the facts alleged in their complaint.[1]

While Plaintiffs acknowledge that *Cousins* and the present action each involve H.B. 1557, that is where the cases' similarities end. The two cases "are not sufficiently similar—either in kind or procedural posture—as to create 'the probability of inefficiency or inconsistency'" that is the concern of M.D. Fla. Local Rule 1.07(a)(2)(B). *Health Freedom Def. Fund, Inc. v. Biden*, 572 F. Supp. 3d 1257, 1260 (M.D. Fla. 2021). Indeed, as set out in further detail herein, the present action and *Cousins* have no factual overlap whatsoever, the parties in the two cases are substantially different, the legal theories in the two cases are overwhelmingly different (*Cousins* brings a pre-enforcement facial challenge to H.B. 1557), and the cases are at significantly different procedural stages.

Transferring this action would only serve to prejudice Plaintiffs, who are already suffering a cognizable First Amendment injury and have expeditiously sought preliminary injunctive relief here to correct this ongoing harm. There is no reason to delay the redress of Plaintiffs' continuing irreparable harm

---

[1] All capitalized terms not otherwise defined herein have the meanings given to them in the complaint, ECF No. 1.

simply because the same statute underlying the Lake County Defendants' actions is being challenged by *different* plaintiffs pursuing *different* legal theories based on *different* acts by *different* defendants in another court in this district.

## BACKGROUND

### I. This Litigation

Plaintiffs filed this case on June 20, 2023. ECF No. 1. The Author Plaintiffs, residents of New York, are the authors of the award-winning children's book *And Tango Makes Three* ("*Tango*"). The Student Plaintiffs, who are all residents of Lake County, Florida, want to borrow *Tango* from their school libraries. But in or before December 2022, the School Board of Lake County barred access to *Tango* for all students in kindergarten through third grade, expressly stating that its decision was based on Florida's 2022 House Bill 1557 ("H.B. 1557"), a vague and overbroad statute that discriminates based on content and viewpoint by barring "[c]lassroom instruction … on sexual orientation or gender identity." Florida has since passed 2023 House Bill 1069 ("H.B. 1069"), which expands H.B. 1557 to cover prekindergarten through eighth grade. Because this action challenges the restriction of *Tango* in Lake County, Plaintiffs filed their complaint in the Ocala Division of the Middle District. After first being assigned to Judge John Antoon II, this case was reassigned to this Court. ECF No. 4.

Plaintiffs named ten Defendants: the School Board of Lake County, Florida and Diane Kornegay, in her official capacity as Superintendent of the Lake County School District (the "Lake County Defendants"), as well as Manny Díaz, Jr., in his official capacity as Florida Commissioner of Education; Ben Gibson, in his official capacity as chair of the Florida State Board of Education; Ryan Petty, in his official capacity as vice chair of the Florida State Board of Education; and Monesia Brown, Esther Byrd, Grazie P. Christie, Kelly Garcia, and MaryLynn Magar, in their official capacities as members of the Florida State Board of Education (the "State Defendants," and, together with the Lake County Defendants, "Defendants").

After filing this action, certain Plaintiffs[2] moved the very next day for a preliminary injunction against the Lake County Defendants, seeking an order restoring students' ability to access *Tango* regardless of grade level in Lake County public school libraries before the first day of school on August 10, 2023, and through the pendency of this action. ECF No. 6. The following day this Court issued an Order to "facilitate an expeditious resolution of Plaintiffs' request." ECF No. 9. That Order "set an expedited briefing schedule in consideration of Plaintiffs' Motion." *Id*.

---

[2] The "Movants" in ECF No. 6 include the Author Plaintiffs as well as a subset of the Student Plaintiffs—D.S., E.S., and M.H. Herein, the motion will simply be referred to as Plaintiffs' Motion for Preliminary Injunction.

On June 28, 2023, the State Defendants filed the present Motion to transfer this action to the court presiding over *Cousins*.

## II. The *Cousins* Litigation

*Cousins* was filed nearly a year ago, on July 25, 2022, in the Orlando Division of this District. That case was assigned to Judge Wendy Berger in the Orlando Division. The plaintiffs in *Cousins* include a married different-sex couple and their four children, who are students in Orange County Public Schools; another student in Orange County Public Schools; a married same-sex couple and their two children who are students in the School District of Indian River County; and a 501(c)(3) organization based in Fort Lauderdale, Florida that supports LGBTQ+ community centers, including centers in Orange, Duval, and Palm Beach Counties (the "*Cousins* Plaintiffs").

The defendants in *Cousins* include the School Boards of Orange, Indian River, Duval, and Palm Beach Counties, as well as certain members of the State Board of Education, including Thomas Grady, Ben Gibson, Monesia Brown, Esther Bird, Grazie P. Christie, Ryan Petty, and Joe York (the "*Cousins* Defendants").

The facts giving rise to the *Cousins* action are many and varied. They include at least the following:[3]

- One plaintiff, a 13-year-old non-binary child in Orange County Public Schools, has experienced bullying based on their gender identity since H.B. 1557 went into effect that they had never experienced at school before. This plaintiff fears that critical lifelines, such as their school's LGBTQ+ student group, will be impacted by H.B. 1557, a reasonable fear, as teachers have already been told to remove safe-space stickers and have been chilled from serving as sponsors of these groups since H.B. 1557's enactment. Other plaintiffs, who are members of this student's family, fear that they will not be able to express themselves about their family at school and/or will not be able to access books that include non-binary characters because materials with LGBTQ+ characters have already been removed or restricted pursuant to H.B. 1557.
- Another plaintiff, a high school senior in Orange County Public Schools who identifies as gay and non-binary, was the president and co-founder of his school's Queer Student Union; however, that

---

[3] The full factual allegations may be found in the *Cousins* Plaintiffs' Second Amended Complaint and Second Motion for Preliminary Injunction. Declaration of Anna T. Neill ("Neill Decl."), Exs. A & B.

organization was effectively disbanded as an official group in October 2022 because the group could not find a teacher who was willing to risk sponsoring the group in light of H.B. 1557. In addition, enforcement of H.B. 1557 makes the plaintiff reluctant to fully express his views, as he was already disciplined previously for presenting about the Stonewall Uprising shortly after H.B. 1557's passage. His access to counselor services has also been impeded by the parental notification provisions of H.B. 1557.

- Other plaintiffs include a same-sex married couple with two children, a fourth grader and third grader in the School District of Indian River County. The third-grade plaintiff wanted to tell his class about a London Pride parade he attended with his brother and dads, and his dads struggled to prepare and protect him in doing so because such discussion could be shut down because of H.B. 1557. Ultimately, his dads suggested that he skip this portion of their family story. Other members of their family have likewise self-censored over concerns about H.B. 1557.

- Another plaintiff is a member-based organization that supports the development of sustainable LGBTQ+ community centers across the country, including in Orlando, Palm Beach County, and Jacksonville. Since July 1, 2022, that plaintiff's staff has had to

spend a couple of hours a week responding to member inquiries about questions such as what H.B. 1557 means, what members can or cannot do, and how members can connect to teachers and school board members. In addition, H.B. 1557 has directly obstructed services traditionally performed by the plaintiff's member centers in tandem with schools and has caused a corresponding increase in demand for direct services at those centers. Since H.B. 1557's enactment, attendance at support groups offered by one of the plaintiff's members has doubled and staff are struggling to meet the needs of youth and parents who have expressed increased anxiety and distress as a result of H.B. 1557. A similar increased demand for services has caused another of the plaintiff's members to hire a new full-time mental health therapist and to increase spending for additional contracted therapists, diverting resources from other core programmatic activities. Upon enactment of H.B. 1557, another of the plaintiff's members that subcontracts with Duval County Public Schools has had meetings with the school system cancelled and at least one student referral has been blocked, cooperative meetings to support students and teachers have been hindered, and teacher sponsors of student LGBTQ+ groups have been chilled from participating in meetings.

Approximately one month after filing their complaint, the *Cousins* Plaintiffs filed a motion for a preliminary injunction. Shortly thereafter, the Attorney General of Florida moved to intervene in that case and the court granted her motion to do so, adding the Attorney General as an intervenor-defendant. On October 14, 2022, the *Cousins* Plaintiffs filed a First Amended Complaint, and on October 20, 2022, the court denied the *Cousins* Plaintiffs' Motion for Preliminary Injunction—which sought to enjoin any enforcement of H.B. 1557—and dismissed the First Amended Complaint without prejudice. Neill Decl., Ex. C.

Thereafter, the *Cousins* Plaintiffs filed a Second Amended Complaint on November 3, 2022. Neill Decl., Ex. A. On November 21, 2022, the *Cousins* Plaintiffs filed a Second Motion for Preliminary Injunction, which also sought to enjoin any enforcement of H.B. 1557. Neill Decl., Ex. B. On December 16, 2022, the *Cousins* Defendants filed motions to dismiss the Second Amended Complaint. *See* Docket in Case No. 22-cv-1312 (M.D. Fla.) ("*Cousins* Docket"), Neill Decl., Ex. D (last visited July 5, 2023). Since December 22, 2022 and January 31, 2023, respectively, the *Cousins* Plaintiffs' Second Motion for Preliminary Injunction and the *Cousins* Defendants' motions to dismiss have been fully briefed. *Id.* Discovery also appears to be well underway, as the *Cousins*

9

Defendants' Motion to Stay Discovery was denied over four months ago on February 7, 2023, and the school board defendants were ordered to respond to discovery requests by February 21, 2023. *Id.*

## **LEGAL STANDARD**

Local Rule 1.07(a)(2)(B) provides that "[i]f actions before different judges present the probability of inefficiency or inconsistency, a party may move to transfer a later-filed action to the judge assigned to the first-filed action." "The proposed transferor judge must resolve the motion," and can only transfer the action only "with the consent of the transferee judge." *Id.* However, even if the proposed transferee judge consents, whether or not to grant such a transfer "is vested in the sound discretion in the [proposed transferor] Court." *Daniels v. Gov't Emps. Ins. Co.*, 2020 WL 6599420, at *2 (M.D. Fla. Jan. 15, 2020). "[N]othing in Rule 1.07(a)(2)(B) mandates that a judge in the later-filed action grant a party's request to transfer, even if the party satisfies [the] threshold standard to seek a transfer." *Health Freedom*, 572 F. Supp. 3d at 1262. In exercising its discretion, the proposed transferor judge considers "a plaintiff's opposition to the transfer, the convenience of the parties, efficiency, and the interests of justice." *Id.* (citation omitted).

# ARGUMENT

## I. There is No Overlap Between the Facts of This Case and the Facts of *Cousins*

The underlying factual basis for this case is a straightforward act, directly traceable to viewpoint discrimination and the challenged statute: In or around December 2022 the School Board of Lake County barred access to *Tango* for all students in kindergarten through third grade, expressly stating that its decision was based on H.B. 1557. Lake County complied with H.B. 1557 by restricting students below the fourth grade from reading *Tango* because of the content and viewpoint expressed in the book. *Tango* was a school library book, not part of the school curriculum; the book is factually accurate, non-vulgar, and non-obscene; *Tango* had previously stood on school library shelves; and *Tango* was restricted for illegitimate, narrowly partisan and political reasons. The restriction of students' access to *Tango* violates the First Amendment to the United States Constitution. By discriminating based on content and viewpoint, it infringes both the authors' right to freedom of expression and the students' right to receive information.

The facts at issue in *Cousins* are entirely distinct from the facts here. There, as described *supra* at pp. 6-8, a number of plaintiffs—including parents, children, and a member-based social services organization—have reported self-

11

censorship, the inability to access LGBTQ+ support groups or services, increased burdens and/or interference with the provision of LGBTQ+ support services, and/or the inability to access library books featuring LGBTQ+ characters. Notably, however, although *Cousins* generally alleges that at least the Orange County and the Palm Beach County school districts have "remove[d] LGBTQ+ materials from their libraries," Neill Decl. Ex. A ¶ 37, *Cousins* does not allege the restriction or removal of any specific title from such libraries, much less *Tango*. None of the facts underlying *Tango*'s removal from Lake County public schools is, or ever could be, at issue in *Cousins*.

To be sure, some harms wrought by H.B. 1557 underpin the factual allegations in this case as well as in *Cousins*. But that is where the commonalities in these two actions end. *Cousins* contains no allegations about *Tango*, and this action does not rely on any of the numerous facts alleged in *Cousins*. Where two actions are factually distinct, transfer is not warranted. *See Arbit v. Makrides*, 2011 WL 13143910, at *1 (M.D. Fla. Nov. 3, 2011) (denying transfer under predecessor to Local Rule 1.07(a)(2)(B) where common questions of fact were "superficial"). The simple fact that this action and *Cousins* both challenge the same statute is insufficient to support a transfer in light of the significant factual differences between the actions. *See Health Freedom*, 572 F. Supp. 3d at 1264 ("While the actions may challenge the same agency action, these key

12

factual differences may lead to differing discovery, legal argument and analysis, and may require resolution on different grounds." (citing *Mariani v. Nocco*, 2021 WL 3172920, at *1–2 (M.D. Fla. July 27, 2021) (denying an intra-district transfer because "the specific facts giving rise to [plaintiff's] case [were] not duplicative of the facts giving rise to the other cases," despite allegations that the plaintiffs in the two actions were both victims of common defendants' fraudulent scheme))).

## II. The Parties to This Case and the Parties to *Cousins* Are Substantially Different

Not only are the facts in this case distinct from those in *Cousins*, but the parties to each case differ as well. The two actions do not have a single plaintiff in common. As for defendants, Plaintiffs here sued the Lake County Defendants because *Tango* was restricted in Lake County school libraries by the Lake County School Board, and that restriction is enforced by the Superintendent of the Lake County School District. The Lake County Defendants are not named in the *Cousins* action. Likewise, because the actions complained of in *Cousins* took place in Orange, Indian River, Duval, and Palm Beach Counties, the school boards of those counties have been sued in that action. None of those four school boards is a defendant in this case.

As for the State Defendants here, Plaintiffs have sued Manny Díaz, Jr., in his official capacity as Florida Commissioner of Education. Mr. Díaz is not

13

named as a defendant in *Cousins*. The remaining State Defendants here are all sued in their official capacities as officers or members of the Florida State Board of Education. Plaintiffs acknowledge that these defendants are in common between this case and *Cousins*.

Even where certain defendants are in common between two actions, however, the inclusion of additional different defendants weighs against transfer under Local Rule 1.07(a)(2)(B). Indeed, in the only case cited by the State Defendants in their Motion, *Grant v. Centerstate Bank*, the court denied the requested motion to transfer "because, although the cases share a common Defendant, the issues in the two cases do not overlap to the point of creating the probability of inefficiency or inconsistency." 2021 WL 9594008, at *2 (M.D. Fla. Feb. 19, 2021). Similarly, in *Parkervision, Inc. v. Qualcomm Inc.*, the court denied an intra-district transfer motion after finding the second-filed case "distinguishable" because of "the inclusion of several additional defendants." 2015 WL 12852308, at *2 (M.D. Fla. Mar. 9, 2015). Likewise, the court in *Health Freedom* relied on the absence of additional defendants who were named in the first-filed action and were not named in the second-filed action to deny a transfer. 572 F. Supp. 3d at 1263. Here, *Tango* includes the Lake County Defendants and Mr. Díaz, who are not parties to *Cousins*, while *Cousins* includes four additional county school boards that are not defendants here. Transfer under such circumstances is not warranted, as it would "inject[] a new set of legal and

14

factual considerations" based on the uncommon defendants. *Parkervision*, 2015 WL 12852308, at *2.

### III. The Legal Theories at Issue in This Case Are Substantially Different from Those in *Cousins*

Because of the different parties and different facts at issue in this case versus in *Cousins*, it is unsurprising that the legal arguments advanced in each case are substantially different. Because *Tango* has already been restricted by H.B. 1557 and because it will be restricted imminently by H.B. 1069, Plaintiffs here have brought an *as-applied* challenge to those statutes. ECF. No. 1 ¶ 14 ("Because *Tango*'s restriction in Lake County was specifically motivated and justified by the specter of enforcement of the vague and discriminatory H.B. 1557, that statute is unconstitutional as applied to these facts."); *see also id.* ¶¶ 120–21 (Count I challenges H.B. 1557 "as applied" and H.B. 1069 as "as it will be applied" to the Author Plaintiffs), ¶ 149 (Count II challenges H.B. 1557 "as applied" and H.B. 1069 "as it will be applied" to the Student Plaintiffs), ¶¶ 161–62 (Count III challenges the statutes' vagueness because "the Lake County Defendants applied H.B. 1557" or "will apply H.B. 1069" either beyond the statutes' scope or without an understanding of whether their actions were required by the statutes), ¶ 173 (Count IV challenges the statutes' overbreadth

15

because they "will be applied in a manner that infringes authors' right to freedom of expression and students' right to receive information, as H.B. 1557 was applied here and H.B. 1069 will be applied here.")

In contrast to the *as-applied* challenge here, the *Cousins* Plaintiffs "have brought a *pre-enforcement facial challenge* to the law … in addition to an as-applied challenge." *Cousins* Plaintiffs' Resp. to School Board Defendants' Motions to Dismiss, Neill Decl., Ex. E at 3 (emphasis added). Because of this pre-enforcement facial challenge, the *Cousins* Plaintiffs have argued that "it does not matter for standing purposes what actions the school boards, and their respective school districts, have or have not taken." *Id.* at 2. In this case, however, the actions of the Lake County Defendants in restricting *Tango* are central to Plaintiffs' as-applied challenge.

"Middle District courts applying the intra-district transfer rule have found differing claims—even when the defendants are almost identical—a sufficient reason to deny transfer." *Health Freedom*, 572 F. Supp. 3d at 1263 (citing *Daniels*, 2020 WL 6599420, at *1–2 (finding two actions not sufficiently related, despite requesting the same relief against mostly the same defendants, because one case "address[ed] only a subset of the claims asserted in [the other]"); and *Parkervision*, 2015 WL 12852308, at *2 (denying a motion for an intra-district transfer, despite potential for some "duplication of effort," because some claims and defendants were not common to both actions)). Transfer

16

should be denied here because the inclusion of an additional, pre-enforcement facial challenge to H.B. 1557 in *Cousins* means that the legal theories underlying that case are sufficiently different from those at issue here. *See id.* at 1264 (denying transfer because the two cases may include "dissimilar legal arguments," including that the plaintiffs in one action "may face different standing and injury-in-fact challenges").

IV. **This Case and *Cousins* Are at Different Procedural Stages, and Transfer Would Prejudice Plaintiffs by Delaying Resolution of Their Claims**

In addition to the substantial factual and legal differences and the presence of different parties in each case, transfer to the *Cousins* court would also be inappropriate here because "[t]he two actions are at different procedural stages of the litigation." *Health Freedom*, 572 F. Supp. 3d at 1264. Here, Defendants have not answered or moved to dismiss, and their deadline to do so is not until at least July 14, 2023. By contrast, *Cousins* is already nearly a year old, and the original complaint in that matter has already been amended twice. *See Cousins* Docket, Neill Decl., Ex. D. Having dismissed the First Amended Complaint and denied the *Cousins* Plaintiffs' first motion for a preliminary injunction, Neill Decl., Ex. C, the *Cousins* court currently has pending five motions to dismiss the Second Amended Complaint, as well as a second motion

17

for a preliminary injunction.[4] *Cousins* Docket, Neill Decl., Ex. D. As the State Defendants admit in their Motion, those matters are already "fully briefed and ripe for decision." ECF No. 13 at 5. In addition, discovery has already commenced in *Cousins*, where the school board defendants were ordered on February 7, 2023 to respond to discovery requests by February 21, 2023—almost five months ago. *Cousins* Docket, Neill Decl., Ex. D.

Here, by contrast, the only substantive matter currently before the Court is Plaintiffs' Motion for Preliminary Injunction, ECF No. 6, which will be fully briefed by July 20, 2023, ECF No. 9, and which this Court has set for oral argument on July 26, 2023, ECF No. 11. Plaintiffs have requested preliminary injunctive relief before the start of the Lake County school year on August 10, 2023. ECF No. 9 at 1, 25. The exigency of the relief requested in this motion is not echoed in the pending *Cousins* second preliminary injunction motion. *See* Neill Decl., Ex. B at 3, 25 (requesting preliminary injunctive relief but not by any date certain). Indeed, that preliminary injunction motion has been fully briefed for over six months, and argument has not been scheduled.

---

[4] The State Defendants claim that "as here, the State Defendants [in *Cousins*] moved to dismiss and opposed a preliminary injunction on standing grounds," Motion ¶ 2, but the State Defendants have not filed a motion to dismiss here and have not opposed a motion for a preliminary injunction (nor could they, as the motion seeks an injunction only against the Lake County Defendants).

18

Because of their different procedural postures, transfer of this action to the *Cousins* court would materially prejudice Plaintiffs here. *See Myers v. Provident Life & Accident Ins. Co.*, 2019 WL 5725179, at *2 (M.D. Fla. June 14, 2019) (finding transfer was inappropriate "[b]ecause of the different procedural postures in this case and [an earlier-filed case]" and that "transfer now … would either prejudice the Plaintiff or adversely affect the Case Management and Scheduling Order in [the earlier-filed case]"). This case is well behind *Cousins* in terms of pleadings and motion to dismiss briefing. If this case were to be transferred, this case would likely need to "catch up" before it was similarly situated to *Cousins*, which could take many months—well beyond the impending start of the school year on August 10, 2023. There is no reason to delay the redress of Plaintiffs' continuing irreparable harm simply because the same statute underlying the Lake County Defendants' actions is being challenged in another court in this District.

## **CONCLUSION**

For the foregoing reasons, this Court should deny the State Defendants Time-Sensitive Motion to Transfer Pursuant to Local Rule 1.07.

19

Dated: Miami, FL
        July 7, 2023

Respectfully submitted,

By:   /s/    *Anna T. Neill*
Anna T. Neill (FBN 100945)
William J. Blechman (FBN 379281)
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, FL 33131
Tel: 305-373-1000
atn@knpa.com
wjb@knpa.com

Faith E. Gay (FBN 129593)
Lauren J. Zimmerman*
Max H. Siegel*
Nancy A. Fairbank*
Rachel Slepoi*
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
lzimmerman@selendygay.com
msiegel@selendygay.com
nfairbank@selendygay.com
rslepoi@selendygay.com

*Counsel for Plaintiffs*

*(application for admission *pro hac vice* forthcoming)

20