## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA

**PETER PARNELL, et al.,**

    **Plaintiffs,**

    **v.**                      **No. 5:23-cv-381-BJD-PRL**

**SCHOOL BOARD OF LAKE COUNTY, et al.,**

    **Defendants.**

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION
## FOR PRELIMINARY INJUNCTION [ECF No. 6]
## AND MEMORANDUM IN SUPPORT THEREOF

Defendants School Board of Lake County, Florida ("School Board") and Diane Kornegay ("Lake County Defendants"), pursuant to the Court's June 22, 2023 Order [ECF No. 9] respond in opposition to the Motion for Preliminary Injunction filed by Plaintiffs Justin Richardson and Peter Parnell (collectively "Author Plaintiffs") and DS, ES, and MH (collectively "Student Movants") ("Motion") [ECF No. 6], and state as follows:

### INTRODUCTION

On July 1, 2022, Florida State House Bill 1557 ("HB 1557") became effective. HB 1557 created section 1001.42(8)(c), Florida Statutes, part of the "Powers and Duties of District School Board" section of the education code related to student welfare. As of July 1, 2022, section 1001.42(8)(c), Florida Statutes stated,

"Classroom instruction by school personnel or third parties on sexual orientation or gender identity may not occur in kindergarten through grade 3 or in a manner that is not age-appropriate or developmentally appropriate for students in accordance with state standards." Fla. Stat. § 1001.42(8)(c)(3) (2022).

On July 1, 2023, Florida State House Bill 1069 ("HB 1069") became effective. HB 1069, in part, modified section 1001.42(8)(c), Florida Statutes, to state "Classroom instruction by school personnel or third parties on sexual orientation or gender identity may not occur in prekindergarten through grade 8, except when required by ss. 1003.42(2)(n) 3. and 1003.46. If such instruction is provided in grades 9 through 12, the instruction must be age-appropriate or developmentally appropriate for students in accordance with state standards. This subparagraph applies to charter schools." Fla. Stat. § 1001.42(8)(c)(3) (2023).

Plaintiffs' Complaint and Motion are based solely on a book entitled *And Tango Makes Three* *("Tango")*. Although there is much in the Complaint and Motion about the passage of HB 1557 and HB 1069, the prayer for relief in the Motion is a "preliminary injunction pursuant to Fed. R. Civ. P. 65(a) and Local Rule 6.02, requiring the Lake County Defendants to restore students' ability to access <u>Tango</u> regardless of grade level in Lake County public school libraries before the first day of school on August 10, 2023, and throughout the pendency of this action." [ECF No. 6, Conclusion]. As is addressed in detail below, there is no

need for the Court to engage with or review any of the legal analysis as to Plaintiffs' purported First Amendment arguments; Plaintiffs are not entitled to a temporary injunction because the relief is untimely, Plaintiffs' unexplained delay shows there is no irreparable harm, the Author Plaintiffs and Student Movants lack standing, and the Motion is moot because the age restriction tag at issue has been removed.

## FACTUAL BACKGROUND

School Board is the governing body of the School District of Lake County, Florida, a K-12 school district responsible for the operation, control, and supervision of public schools located in Lake County. Fla. Stat. §§1001.30; 1001.32(2) (2023). Diane Kornegay is the Superintendent of Schools for Lake County and has been the Superintendent since being appointed to such position by the School Board on January 18, 2017. Affidavit of Diane S. Kornegay, ¶2.

In the Complaint, there are six identified student Plaintiffs. The first, EDB, is a "rising fourth-grade student at Round Lake Charter School, a public elementary school in Mount Dora." [ECF No. 1, ¶21].[1] The second, ZT, "is a rising seventh-grade student. In advance of her move, she applied and was admitted to Pinecrest Academy, a public charter school in Tavares, Florida, the county seat of Lake County. She will begin classes at Pinecrest Academy when the school year

---

[1] Although Round Lake is a public school, it is a public charter school.

begins on August 10, 2023." [ECF No. 1, ¶27]. The third, ET, "is a rising seventh-grade student. In advance of her move, she applied and was admitted to Pinecrest Academy, a public charter school in Tavares, Florida, the county seat of Lake County. She will begin classes at Pinecrest Academy when the school year begins on August 10, 2023." [ECF No. 1, ¶34]. The fourth, DS, "attends public school in Lake County, Florida. D.S. attended Beverly Shores Elementary School this past year but will transfer to Triangle Elementary School in the upcoming school year. He is entering first grade." [ECF No. 1, ¶39]. The fifth, ES, "will enter kindergarten at Triangle Elementary School—a public school in Lake County, Florida—in the upcoming school year." [ECF No. 1, ¶46]. The sixth, MH, "attends public school in Lake County, Florida. M.H. attended Beverly Shores Elementary School this past year but will transfer to Triangle Elementary School in the upcoming school year. He is entering third grade." [ECF No. 1, ¶51].

For the Motion, the Student Movants are limited to DS, ES, and MH. [ECF No. 6, p. 7]. As a preliminary matter, this appears to be a tacit acknowledgement that EDB, ZT, and ET, have no standing as to the School Board, Florida, because they attend or plan to attend independent charter schools. The School Board serves as sponsor of every public charter school located within Lake County, including Round Lake Charter School and Pinecrest Academy - Tavares. Affidavit of Diane S. Kornegay, ¶3. However, in its role as sponsor, the School Board has very limited

involvement with charter school operations. Affidavit of Diane S. Kornegay, ¶4. More specifically, each charter school has a governing board that is separate and distinct from School Board and School Board does not have the authority to require any charter school to select, maintain, or age restrict any particular library books. Affidavit of Diane S. Kornegay, ¶4.

In the Motion, Author Plaintiffs and Student Movants acknowledge they were aware of the alleged harm months ago, by asserting "[i]n or before December 2022, the Lake County Board decided to deprive kindergarten through third-grade students of access to the lauded and beloved <u>Tango</u>, which was previously accessible to Lake County students in all grades." [ECF No. 6, p. 6]. Author Plaintiffs and Student Movants caveat this broad statement in footnote 6, by acknowledging "[s]ome Lake County public school libraries do not have a copy of <u>Tango</u>, but they can borrow the book from other Lake County schools via interlibrary loan." [ECF No. 6, p. 6]. The foregoing, which cites to, and relies upon, the sworn under penalty of perjury <u>Declaration of Faith E. Gay</u>, is, at best, intentionally misleading. Exhibit B to the Motion is a printout of the School District of Lake County Follett Destiny Library Catalog ("Destiny").2 [ECF Nos. 6-4, p. 1 and 6-6, p. 2]. Based on the <u>Declaration of Faith E. Gay</u> and the Destiny catalog,

---

2 Destiny is the product name for the School Board's library management system, Follett School Solutions. Affidavit of Diane S. Kornegay, ¶15.

Plaintiffs are aware there are only three copies of <u>Tango</u> in the Lake County school library system. [ECF Nos. 6-4, p. 2 and 6-6, p. 2].

This information is relevant to the present Motion because Tango is not, and has not been, located at any non-charter public schools which any of the Plaintiffs actually attended. Affidavit of Diane S. Kornegay, ¶¶ 5-7. Two copies of <u>Tango</u> are located at Triangle Elementary School and one copy is located at Leesburg Elementary School. Affidavit of Diane S. Kornegay, ¶5. Each of the Student Movants allegedly intends to start school at Triangle Elementary School, but as of the present Motion there is no pending controversy. Students are not able to check out books from any school library outside of the regular school year. Affidavit of Diane S. Kornegay, ¶8. At the time this lawsuit was filed, School Board's regular school year for 2022/2023 had already ended, and the regular school year for 2023/2024 is not scheduled to begin until August 12, 2023. Affidavit of Diane S. Kornegay, ¶¶ 8-10.

Further, to Plaintiffs' footnote 6 about interlibrary loans, <u>Tango</u> has not been requested through interlibrary loan **since at least November 2, 2022**. Affidavit of Diane S. Kornegay, ¶ 6. In the Motion, Plaintiffs try to create an injury by making bald assertions in sworn declarations about each Student Movant's intention and desire to read <u>Tango</u> at some point in the future. [ECF Nos. 6, p. 21 and 6-3, p. 10]. However, <u>Tango</u> was not at any of the Student Movants' schools last year, and no

student – including any of the Student Movants – has requested <u>Tango</u> through interlibrary loan since at least November 2, 2022.

The foregoing is all dispositive as to the Motion because it establishes the requested relief is untimely, Plaintiffs' unexplained delay shows there is no irreparable harm, and the Author Plaintiffs and Student Movants lack standing. Further, the Motion is moot because there is no longer a pending controversy. As noted in the Motion's supporting materials, the age restriction at issue is a designation in Destiny that a book is "available to grades 4 and up only per HB 1557." [ECF Nos. 6-4, ¶ 4 and 6-6, pp. 2-8]. Although <u>Tango</u> was tagged as age restricted within Destiny, it was never physically removed from the school library shelves. Affidavit of Diane S. Kornegay, ¶ 15.

Plaintiffs acknowledge that School Board's actions concerning <u>Tango</u> have been an attempt to follow the law. [ECF No. 1, ¶ 95]. On June 21, 2023, the Lake County Defendants received a legal memorandum that the Florida Department of Education previously filed December 21, 2022 in *Cousins, et al. v. Grady, et al.* (M.D. Florida Case No. 6:22-cv-1312-WWB-LHP), in which the Florida Department of Education explicitly took the position that the HB 1557 age restriction on sexual orientation and gender identity applies only to classroom instruction and does not apply to library books. Affidavit of Diane S. Kornegay, ¶ 16. On June 22, 2023, in light of the Florida Department of Education's guidance concerning HB 1557,

Superintendent Kornegay made the decision to have the age restriction tag removed from <u>Tango</u>. Affidavit of Diane S. Kornegay, ¶ 17. It has always been, and will continue to be, Superintendent Kornegay's directive, that all School Board personnel follow the law. Affidavit of Diane S. Kornegay, ¶ 18.

## ARGUMENT AND AUTHORITY

### I. <u>Mandatory or Affirmative Preliminary Injunction Standard</u>

As stated by the Eleventh Circuit Court of Appeals, a preliminary injunction "is an 'extraordinary and drastic remedy,' and [Plaintiffs] bear the 'burden of persuasion' to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). The four prerequisites for preliminary injunction that Plaintiffs must establish are "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Id.*; *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). "Failure to show any of the four factors is fatal[.]" *Scroos LLC v. Attorney Gen. of United States*, 620CV689ORL78LRH, 2020 WL 5534281, at *2 (M.D. Fla. Aug. 27, 2020) <u>citing</u> *Am. Civil Liberties Union of Florida, Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

## II.  There is No Substantial Threat of Irreparable Harm because Plaintiffs Substantially Delayed Bringing Their Motion, and the Requested Relief is Moot Because Defendants are not Restricting Access to Tango.

Although substantial likelihood of success on the merits is the first prong, Lake County Defendants begin with irreparable harm because Plaintiffs have failed to meet their burden of showing irreparable harm. "Irreparable harm is 'the sine qua non of injunctive relief. [T]he absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.'" *Scroos LLC*, 2020 WL 5534281, at *2 <u>citing</u> *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). A preliminary injunction requires "showing 'imminent' irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) <u>citing</u> *Siegel*, 234 F.3d at 1176 (11th Cir. 2000).

Without considering whether there is actually a threat of irreparable harm, Plaintiffs are not entitled to a finding of irreparable harm because Author Plaintiffs and Student Movants have severely delayed in bringing this Motion. "As numerous courts have held, even a few months delay in seeking injunctive relief 'necessarily undermines' and 'militates against a finding of irreparable harm.' *Scroos LLC*, 2020 WL 5534281, at *2 <u>citing</u> *Wreal, LLC* 840 F.3d at 1248 <u>and</u> *Roberts v. Swearingen*, No. 8:18-cv-1062-T-33TGW, 2018 WL 4620707, at *3 (M.D. Fla. Sept. 26, 2018).

In the Motion, as part of their effort to establish irreparable harm Author Plaintiffs and Student Movants assert that "Author Movants have been injured in their exercise of their free speech rights since at least December 2022, when access to *Tango* was restricted…D.S., E.S., and M.H. want to read *Tango* and have specific plans to do so, but those plans have been foiled by the Lake County Defendants' restrictions. D.S. and M.H.'s ability to receive information—namely, *Tango*'s wholesome story and message of tolerance—has been limited since last December because of the Lake County Defendants' suppression of *Tango*…Four of five Movants have lost their First Amendment freedoms for at least seven months and running…" [ECF No. 6, p. 21]. The Motion also cites national news coverage about the School Board and <u>Tango</u>, articles which were written in January 2023. [ECF No. 6, p. 6 n. 6 and p. 11 n. 10]. Author Plaintiffs and Student Movants offer no rationale or explanation why they waited "at least seven months and running" to file the present suit and Motion, or why they waited until ordered by this Court (and after publishing notice of the suit in national media) to attempt service on the School Board.

The "very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Wreal, LLC* 840 F.3d at 1248–49 (11th Cir. 2016). A party's "failure to act with speed or urgency in moving for a preliminary injunction necessarily

undermines a finding of irreparable harm." *Id.* citing *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985); *Taylor v. Biglari*, 971 F.Supp.2d 847, 853 (S.D. Ind. 2013) (citing *Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983)); *Silber v. Barbara's Bakery, Inc.*, 950 F.Supp.2d 432, 439–40 (E.D.N.Y. 2013); *Hi–Tech Pharm., Inc. v. Herbal Health Prods., Inc.*, 311 F.Supp.2d 1353, 1357–58 (N.D. Ga. 2004); *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F.Supp.2d 1350, 1355–56 (S.D. Fla. 2002). When a movant fails to offer any explanation or justification for a five-month delay in seeking a temporary injunction, a district court does not abuse its discretion in denying the temporary injunction for finding find a lack of imminent irreparable harm. *Wreal, LLC* 840 F.3d at 1248–49 (11th Cir. 2016). As this Court is well aware, a number of other legal challenges have been filed regarding HB 1557, including *Cousins, et al. v. Grady, et al.*, which was filed in 2022 and currently pending in this Court.

If there is no substantial threat of irreparable harm, then no further analysis is required. *Northeastern Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). The mere possibility of injury is not enough to satisfy this threshold element; rather, Plaintiffs must prove that there is a substantial likelihood of an actual and imminent irreparable injury. *Siegel*, 234 F.3d at 1176. In this case, there is no substantial threat of irreparable harm because the action is moot. The Lake County Defendants are not actively age

restricting <u>Tango</u> under HB 1557, and that is the sole harm alleged in the Motion.

**III.  Plaintiffs are Unlikely to Succeed on the Merits as there is No Justiciable Claim Because there is No Controversy Since Lake County Defendants are Not Restricting Access to Tango.**

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559 (1992). The mootness doctrine is among the justiciability limitations that Article III places on the federal judiciary. *See Coral Springs St. Sys., Inc. v. City of Sunrise,* 371 F.3d 1320, 1328 (11th Cir.2004) (citing *Vander Jagt v. O'Neill,* 699 F.2d 1166, 1179 (D.C.Cir.1982) (Bork, J., concurring)). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1335–36 (11th Cir.2001) (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969)) (alterations in original). "Plainly, if a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Coral Springs St. Sys.,* 371 F.3d at 1328. "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehabilitative Servs.,* 225 F.3d 1208, 1217 (11th Cir.2000). Therefore, a moot claim must be dismissed for lack of subject matter jurisdiction. *See Al Najjar,* 273 F.3d at 1336.

A case may be rendered moot as a result of a change in circumstances or a change in the law. *Coral Springs St. Sys.,* 371 F.3d at 1328. "[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *Id.* (quoting *Sec'y of Labor v. Burger King Corp.,* 955 F.2d 681, 684 (11th Cir.1992)) (internal quotation marks omitted). "Because of the possibility that the defendant could merely return to his old ways,' [t]he test for mootness in cases such as this is a stringent one.... A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Burger King,* 955 F.2d at 684 (quoting *Greenwood Utils. Comm'n v. Hodel,* 764 F.2d 1459, 1462–63 (11th Cir.1985)). "However, governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." *Coral Springs St. Sys.,* 371 F.3d at 1328–29. "[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur." *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.,* 382 F.3d 1276, 1283 (11th Cir.2004) (emphasis in original). "When government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit." *Id.* <u>citing</u> *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 474 (1990); *Princeton Univ. v. Schmid,* 455 U.S. 100, 103 (1982) (*per curiam* ); *Kremens v.*

*Bartley,* 431 U.S. 119, 128–29 (1977); *Diffenderfer v. Cent. Baptist Church, Inc.,* 404 U.S. 412, 415 (1972). The Supreme Court has rejected an "assertion of mootness in this kind of challenge *only* when there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated." *Troiano,* 382 F.3d at 1283 (11th Cir.2004) <u>citing</u> *City of Mesquite v. Aladdin's Castle,* 455 U.S. 283, 289 & n. 11 (1982) (rejecting the argument that a challenge to a city statute was moot, even though the statute had been repealed, because there was "no certainty" that the law would not be reenacted and the City had, in fact, announced an intention to reenact it if the Court threw out the case).

The present action is directly on point with *Freedom from Religion Found., Inc. v. Orange Cnty. Sch. Bd.,* a Middle District of Florida case affirmed by the Eleventh Circuit Court of Appeals. *Freedom from Religion Found., Inc. v. Orange Cnty. Sch. Bd.,* 30 F. Supp. 3d 1358, 1363–64 (M.D. Fla. 2014), *aff'd,* 610 Fed. Appx. 844 (11th Cir. 2015). In that case, the Orange County School Board had taken a stance on distributing religious literature on school campuses. *Id.* at 1361. A suit was filed against the Orange County School Board citing violations of the First and Fourteenth Amendments, with relief almost identical to the present action. *Id.* A different federal suit involving the Collier County School Board resulted in a consent decree addressing the proper guidelines for religious literature distribution. *Id.* The Orange County School Board adopted the Collier County

policy, and then moved to dismiss all claims as to prospective relief as moot, which relief was granted on the grounds that the Court lacked subject matter jurisdiction. *Id.* at 1361, 1366.

Here, the School Board implemented at an administrative level an age restriction that the administration believed was required under HB 1557 and Florida law. Affidavit of Diane S. Kornegay, ¶¶ 11-14. As Plaintiffs have noted, the Lake County Defendants did not pass a policy or otherwise take action to restrict Tango other than to cite to HB 1557. Upon becoming aware that the Florida Department of Education has taken the position in *Cousins, et al. v. Grady, et al.* (M.D. Florida Case No. 6:22-cv-1312-WWB-LHP), that HB 1557 does not apply to library books, the Superintendent immediately decided – even before being served with the present litigation – to bring Lake County in line with the prevailing interpretation of HB 1557. As noted above, the Plaintiffs have pled their Complaint generally asserting prospective relief, mostly because Plaintiffs have a standing problem as to past alleged harm. As for this Motion, however, the point is clear – Plaintiffs are asking the Court to grant an injunction for moot prospective relief. That is clearly inappropriate and denial is warranted.

Further, the requested relief – as crafted – is inappropriate in light of *Freedom from Religion Found., Inc. v. Orange Cnty. Sch. Bd.* because it goes beyond HB 1557 and asks the Court to blanketly mandate that Lake County Defendants restore

access to <u>Tango</u> regardless of grade level. [ECF No. 6, pp. 24-25]. The Court in *Freedom from Religion Found., Inc. v. Orange Cnty. Sch. Bd.* soundly rejected this analysis. The Court noted that the Orange County School Board's alignment with Collier County was "carefully balanced" and noted "Defendant may lawfully prohibit outside groups from distributing materials that are not appropriate for distribution in a school setting with the aim of controlling student conduct in the schools." *Freedom from Religion Found., Inc. v. Orange Cnty. Sch. Bd.*, 30 F. Supp. 3d at 1363–64 <u>citing</u> *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico,* 457 U.S. 853, 863–64 (1982) (quoting *Tinker v. Des Moines Sch. Dist.,* 393 U.S. 503, 507 (1969)) (noting the Supreme Court's repeated emphasis of "the comprehensive authority of the States and of school officials ... to prescribe and control conduct in the schools.").

The Court, in finding mootness, noted that the Orange County School Board had acted in good faith, but expected the Orange County School Board could still pass additional restrictions such as "prohibiting the dissemination of content that is sexually explicit, indecent, lewd, or offensive if such would 'undermine the school's basic educational mission.'" *Freedom from Religion Found., Inc.*, 30 F. Supp. 3d at 1364 <u>citing</u> *Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 684–85 (1986). Granting the Motion as requested would impose a prohibition on the Lake County Defendants that would impermissibly eliminate any permissive content analysis

of Lake County media center reading materials. See, e.g. *Am. Civil Liberties Union of Florida, Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1202 (11th Cir. 2009) ("Even assuming that standard applies, however, the plaintiffs still lose if the School Board removed *Vamos a Cuba* not for those prohibited reasons but instead, as the Board insists, for legitimate pedagogical reasons such as concerns about the accuracy of the book. Whatever else it prohibits, the First Amendment does not forbid a school board from removing a book because it contains factual inaccuracies, whether they be of commission or omission. There is no constitutional right to have books containing misstatements of objective facts shelved in a school library"). The Lake County Defendants are not addressing the Plaintiffs' First Amendment claims here, because the issue before the Court is a Motion for Temporary Injunction that is moot.

As noted, unlike a private actor, when a governmental defendant voluntarily ceases a complained of activity – in this case, applying HB 1557 to library books – the cessation moots the suit. *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d at 1283. The only circumstance where the voluntary cessation does not moot the prospective relief is when there is a "substantial likelihood that the offending policy will be reinstated if the suit is terminated." However, the movant has the burden of setting aside the presumption that such action will not be repeated, and there is no evidence that the Lake County

Defendants intend to return to that legal interpretation. Finally, on this Motion there is no reason for the Court to ignore established precedent and assume the Lake County Defendants will simply reinstate its broad interpretation of HB 1557. As noted in the Eleventh Circuit Court of Appeals decision *Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Authority*, if the Lake County Defendants did "choose to reinstate their restrictive policies—or adopt similar ones—the courthouse door is open to Jews for Jesus to reinstate its lawsuit. Under such circumstances, the case would not be moot even if the airport again revoked its policies in response to the lawsuit, because such "flip-flopping" would create a reasonable expectation that the airport would reinstate the challenged practice at the close of the lawsuit." *Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.3d 627, 630 (11th Cir. 1998). That is the exact analysis here. There is no reason for the Court to ignore the black letter law on justiciable controversies in a case of alleged prospective harm.

## IV.   Public Policy Does Not Favor Entry of a Preliminary Injunction Because There is no Urgent Action Required as the Lake County Defendants have Already Removed the Age Restriction as to Tango.

Finally, Plaintiffs have not established that the public interest favors entry of a preliminary injunction. The Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542

(1987). This element goes to "the power of the [Court] to do equity and to mold each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). "Where an important public interest would be prejudiced, the reasons for denying the injunction may be compelling." *City of Harrisonville, Mo. v. W. S. Dickey Clay Mfg. Co.,* 289 U.S. 334, 338 (1933) (finding public interest would not be served because of the high and unreasonable cost to the taxpayers of abating the nuisance at issue). The price of "continuing superintendence" by the Court to enforce an injunction is also an important consideration as to whether an injunction should be granted. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000).

As a preliminary matter, it is not in the public interest to haul the School Board into litigation that, as evidenced by the Complaint and Motion, really seeks to undo the enactment of a state statute. As acknowledged in the Complaint and Motion, the Lake County Defendants age restricted content directly tied to the Lake County Defendants' interpretation of HB 1557. Plaintiffs' Motion – which is not directed at the State Defendants at all – is nothing more than an attempted end around of the merits of the suit as to HB 1557 and HB 1069.

Further, combination of the legal standard on preliminary injunctions and the mootness in the present action also strongly indicate it is not in the public interest to grant the Motion. The "very idea of a preliminary injunction is premised

on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Here, the matter is moot; it is about as legally far from a need for "speedy and urgent action" as possible. There is no need for the Court to make any findings or adjudications as to the constitutionality of HB 1557 and HB 1069 before the case is resolved on the merits. Additionally, as noted above, there have been filed or are currently pending three other federal suits that address the constitutionality of HB 1557 and HB 1069. In fact, Plaintiffs opposed reassignment of this case under the Local Rules because motions to dismiss as to HB 1557 in *Cousins, et al. v. Grady, et al.* (M.D. Florida Case No. 6:22-cv-1312-WWB-LHP) – which involved the same State Defendants as are included in this case - had been fully briefed. [ECF No. 27, p. 19]. The State Defendants are not parties to the present Motion. However, the Motion includes analysis of Plaintiffs' speculative likelihood of success on constitutional questions as to HB 1557 and HB 1069. The State of Florida has a right to be heard on whether HB 1557 and HB 1069 pass constitutional muster, and such a weighty question should be resolved after full exposition, not an abbreviated briefing schedule when there is no pending harm.

## CONCLUSION

Plaintiffs' Motion for Preliminary Injunction against the Defendants School Board of Lake County, Florida and Diane Kornegay, should be denied.

Dated this 13th day of July, 2023.

BOWEN & SCHROTH, P.A.

_/s/ Zachary T. Broome_____
ZACHARY T. BROOME (Lead Counsel)
Florida Bar No. 0091331
600 Jennings Avenue
Eustis, Florida 32726
Telephone (352) 589-1414
Facsimile (352) 589-1726
E-mail Addresses:  zbroome@bowenschroth.com
                   bmckay@bowenschroth.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 13th day of July, 2023, a true and correct

copy of the foregoing was electronically filed in the U.S. District Court, Middle

District of Florida, using the CM/ECF system which will send a notice of electronic

filing to all counsel of record.

_/s/ Zachary T. Broome_____
ZACHARY T. BROOME