1    **UNITED STATES DISTRICT COURT**
     **MIDDLE DISTRICT OF FLORIDA**
2    **OCALA DIVISION**

3                                        :
     **PETER PARNELL et al.,**           :
4                                        :    Case Number:
         Plaintiffs,                     :    5:23-cv-00381-BJD-PRL
5                                        :
                                         :    Jacksonville, Florida
6    v.                                  :    July 26, 2023
                                         :    1:06 P.M. - 2:01 P.M.
7    **SCHOOL BOARD OF LAKE COUNTY,**    :
     **FLORIDA, et al.,**                :
8                                        :
         Defendants.                     :
9                                        :

10

11

12                  **TRANSCRIPT OF MOTION HEARING**
     **RE: [6] PLAINTIFFS PETER PARNELL, JUSTIN RICHARDSON, D.S.,**
13    **E.S., AND M.H.'S MOTION FOR PRELIMINARY INJUNCTION**
                **BEFORE THE HONORABLE BRIAN J. DAVIS**
14                 **UNITED STATES DISTRICT JUDGE**

15

16

17

18

19

20

21
     Proceedings recorded by real-time mechanical stenography.
22   Transcript produced by computer-aided transcription.

23              Stenographically reported before:
           Heather Suarez, RMR, CRR, FCRR, FPR-C, WA CCR
24                 U.S. Official Court Reporter
            (407) 801-8921 | heathersuarez.usocr@gmail.com
25   401 West Central Boulevard, Suite 4600, Orlando, Florida 32801

# A P P E A R A N C E S

For the Plaintiffs:    Nancy A. Fairbank
Max H. Siegel
Lauren J. Zimmerman
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, New York 10104

Anna T. Neill
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100, Four Seasons Tower
Miami, Florida 33131

For the Defendants:   Zachary T. Broome
James A. Myers
BOWEN & SCHROTH, P.A.
600 Jennings Avenue
Eustis, Florida 32726

**-oOo-**

# T A B L E   O F   C O N T E N T S

|  | PAGE |
|---|---|
| ARGUMENT BY MR. SIEGEL | 4 |
| ARGUMENT BY MR. BROOME | 14 |
| REBUTTAL ARGUMENT BY MR. SIEGEL | 34 |
| CERTIFICATE OF REPORTER | 38 |

**P R O C E E D I N G S**

(Call to order of the court at 1:06 P.M.)

THE COURT:  Good afternoon to all.

The Court has convened today in connection with Plaintiffs Peter Parnell, Justin Richardson, D.S., E.S., and M.H.'s Motion for Preliminary Injunction.  The record shows it's Case Number 5:23-cv-381.

And let me apologize to you for our slightly tardy start.  We had some technical issues that I think we have overcome.

But I will recognize for the record on behalf of Plaintiff Attorney Max Siegel.  Is that right?

MR. SIEGEL:  Yes, Your Honor.

THE COURT:  Attorney Lauren Zimmerman.

MS. ZIMMERMAN:  Good afternoon.

THE COURT:  And Attorney Anita Neill.

MS. NEILL:  Anna Neill, Your Honor.  Good afternoon, Your Honor.

THE COURT:  Very good.

And Attorney Nancy Fairbank.

MS. FAIRBANK:  Yes, Your Honor.

THE COURT:  Welcome to all of you.

And on behalf of the defendant, Attorney Zachary Broome.

MR. BROOME:  Good afternoon, Judge.

1      **THE COURT:**  Welcome to you.

2      And Attorney James Myers.

3      **MR. MYERS:**  Good afternoon.

4      **THE COURT:**  Welcome to all of you.

5      This is plaintiff's motion.  You have the burden; so

6  I will hear from you first.

7      **MR. SIEGEL:**  Good afternoon, Your Honor, and may it

8  please the Court.  Max Siegel for the movants.

9      When the Government restricts access to a book in

10  schools based on the viewpoint of that book, it violates the

11  First Amendment under any applicable legal standard; and when

12  the Government violates the First Amendment, it inflicts a

13  per se irreparable harm and the public interest favors

14  preliminary relief.

15      Because the Lake County defendants do not dispute a

16  single one of these statements, movants are entitled to a

17  preliminary injunction.  Rather than respond on the substance

18  of the motion, the Lake County defendants have instead leveled

19  meritless charges that their own misconduct -- their own

20  conduct has mooted the motion and that the motion is untimely.

21      I'm happy to answer questions about the First

22  Amendment issues in the case if Your Honor would like; but,

23  otherwise, I will focus my argument on the mootness and

24  timeliness issues that defendants have put at issue.

25      **THE COURT:**  Well, why don't you summarize for me what

1  the plaintiffs' position is with respect to the merits of a

2  constitutional claim that's made.

3          **MR. SIEGEL:**  Yes, Your Honor.  The motion concerns

4  two of our constitutional claims.  First, it raises a claim for

5  viewpoint discrimination against the author movants.  The

6  author's speech is protected speech, and defendants have

7  expressly waived any argument as to the merits of that -- that

8  claim.  But even if defendants had disputed it, discrimination

9  on the basis of viewpoint is, under the Eleventh Circuit's

10 discussion in *Otto*, arguably a per se constitutional violation.

11 And in this case, on this record, the viewpoint discriminations

12 established by the 40 books that were restricted shown in

13 Exhibit C to the declaration of Faith Gay -- every single one

14 of which has a positive viewpoint towards LGBTQ+ characters and

15 individuals and a message of tolerance and acceptance.

16         And under the *Zukerman* case out of the D.D.C. that we

17 cite, such a pattern is evidence of viewpoint discrimination.

18         **THE COURT:**  What kind of forum is at issue here with

19 respect to the authors?  Why -- your claim is that they have a

20 right to have these books in a public library -- or in a school

21 library, rather.  Why do they have that right?  Where is that

22 established?

23         **MR. SIEGEL:**  I think that our position is slightly

24 different than that.

25         **THE COURT:**  Okay.

1    **MR. SIEGEL:** What's crucial is the distinction

2    between putting a book in libraries and removing the book from

3    libraries.

4        The Fifth Circuit's opinion in *Campbell*, which we

5    cite -- that's 64 F.3d at page 190 -- highlights that removal

6    or restriction of a library book is especially suspect for

7    viewpoint discrimination.

8        But to your question regarding a forum analysis, the

9    Eleventh Circuit *ACLU v. Miami-Dade* opinion, 557 F.3d at

10   page 1202 of that opinion, makes clear that viewpoint

11   discrimination is unconstitutional in school libraries. The

12   Court leaves open whether the *Hazelwood* standard or the *Pico*

13   standard governs claims regarding restriction or removal of

14   books in school libraries, but under either standard, viewpoint

15   discrimination --

16       **THE COURT:** So the author's injury is the removal?

17       **MR. SIEGEL:** Yes. The author's injury is their

18   inability to speak their intended message. They set forth in

19   their declarations their intent for the book to be accessible

20   to a wide audience, including students who maybe may come from

21   alternative family structures or wish to learn about them, and

22   that function of their speech has been injured through the

23   actions of the defendants.

24       **THE COURT:** All right.

25       **MR. SIEGEL:** With respect to the students who bring a

claim for a violation of their right to receive information,

again, viewpoint discrimination clearly violates that right;

and their claim to injury is that, as set forth in

paragraphs 13 through 15 of the Roe declaration, they have a

specific intent to check out the book at a specific time and

that plan has been foiled by defendants' actions.

**THE COURT:** All right.

**MR. SIEGEL:** But as to the issue of mootness that is

the focus of defendants' opposition, the Court shouldn't allow

a transparent attempt to moot the case through voluntary

cessation of conduct the moment that a lawsuit calls that

conduct into question.

To prove mootness in this situation, defendants bear

a heavy burden to show that it is absolutely clear that their

conduct cannot be expected to recur.  But a court in this

district has rejected exactly this argument in nearly identical

circumstances in a case called *S.D. v. St. Johns School*

*District*.

I have copies of the case with me, if I may

approach --

**THE COURT:** You may.

**MR. SIEGEL:** -- Your Honor and your clerk.

**THE COURT:** Do you have copies for your opponent?

**MR. SIEGEL:** Yes.  Yes, Your Honor.

**THE COURT:** Very good.

1          **MR. SIEGEL:**  In the *S.D.* case that I just handed

2     Your Honor, the Court faces nearly identical circumstances of a

3     First Amendment violation at schools and a preliminary

4     injunction motion followed by voluntary cessation that day of

5     the conduct that violated the First Amendment, and the

6     defendants in that case argued that their voluntary cessation

7     had mooted the PI motion and undercut irreparable harm.

8          And in defense of those claims, they put in the

9     affidavit --

10          **THE COURT:**  Let me ask you, if the Court accepts that

11    the Government has not removed this book from the library, you

12    concede that the case is moot?

13          **MR. SIEGEL:**  I'm sorry, Your Honor?

14          **THE COURT:**  If the Court accepts the declarations of

15    the superintendent that the book remains available to students,

16    the case is moot.

17          **MR. SIEGEL:**  I do not agree with that, Your Honor.

18          **THE COURT:**  Okay.  Tell me why -- tell me why you

19    don't agree with that.

20          **MR. SIEGEL:**  The applicable standard for mootness is

21    not just that the conduct has ceased but, rather, that it could

22    not be expected to recur.

23          And in the *S.D.* case, for example --

24          **THE COURT:**  You were headed there.  I understood

25    that.  I just want to make sure -- let's assume the Court does

not find that this is basically an expediency that's subject to change, which is what this case, I think, stands for, and the book remains in the library, according to the superintendent's sworn testimony, available to students.  The case is moot.

**MR. SIEGEL:**  I don't think that accepting that sworn testimony alone would do that because that testimony states only that Ms. Kornegay decided to have the age restriction tag on the book lifted, but it gives no assurance that the age restriction tag will remain lifted.  And, in fact, at pages 16 to 17 of their opposition brief, defendants expressly reserve the right to re-restrict *Tango* based on what they call "content analysis."

So I don't think the immediate lifting of the restriction gets us there with no assurance that the restriction will stay lifted.

**THE COURT:**  Okay.

**MR. SIEGEL:**  In fact, one of the -- to clarify, I do, for the record, want to make clear that this is all as to the PI motion itself.  We think the case itself remains alive.

**THE COURT:**  Oh, for sure.  For sure.  Just with -- and your qualification is well-taken, and I agree with that.

**MR. SIEGEL:**  Thank you, Your Honor.

And so if they -- if you take the declaration at its face value, it still doesn't establish enough to moot even the PI motion.  If you look at what went on in the *S.D.* case, there

the school had ceased requiring students to sing the song that
was at issue in the case, and the principal had put in a
declaration to that effect that said they were not going to
require students to sing this song going forward.  But what the
Court held was that the irreparable injury that is inflicted
the moment a First Amendment violation occurred meant that even
the possibility of recurrence was too severe a hazard to risk
for the Court to withhold a preliminary injunction.

          **THE COURT:**  All right.

          **MR. SIEGEL:**  So in this case you also look at the
factors that the Eleventh Circuit applies in assessing claims
of mootness.

          First, look at whether the timing of the decision to
cease the conduct and the context show that it was the product
of substantial deliberation.  Here that factor is clearly not
met.  We have one day after a PI motion is filed -- or, excuse
me -- the day the PI motion is filed one day after the
complaint.

          **THE COURT:**  Couldn't it be argued that that's just a
matter of serendipity?  I mean, the policy that resulted in the
change had occurred six months earlier, and the fact that it's
not made known until six months later I'm not sure addresses
the proximity to the restraint sufficiently.  But tell me why
you think it does.

          **MR. SIEGEL:**  I think describing it as a policy goes

1   beyond what it really is.  The -- what defendants describe is

2   the legal memorandum they received is merely a litigation

3   filing, a brief that was filed in opposition to a motion for a

4   PI in the *Cousins* case.

5       **THE COURT**:  So what kind of iterations of that

6   decision would be more persuasive to you and, more importantly,

7   to the Court, you would argue?

8       **MR. SIEGEL**:  If the superintendent or the School

9   Board had adopted a binding rule that prevented the removal of

10  books based on their viewpoint and had widely disseminated that

11  rule, had given trainings on that rule, had provided

12  comprehensive guidance to school personnel on that rule, it's

13  possible that that could moot this motion.

14      But here, where all that is in the record is a

15  one-off, knee-jerk decision by one person in response to a memo

16  they got from DoE, a codefendant here as a result of this

17  litigation -- that's far from the deliberative policy or

18  unambiguous policy that would be necessary to moot the motion.

19      In the *Harrell* case that we cite, the

20  Eleventh Circuit goes so far as to say that repeal of a statute

21  is the only thing that a government can do to unambiguously

22  cease its conduct.  We acknowledge that the Lake County

23  defendants don't have the power to repeal a statute.  But

24  something on that order, something that reflects a long-term

25  equipment, a process of deliberation and voting is very

1    different from a change one day after they get sued.

2            **THE COURT:**  All right.

3            **MR. SIEGEL:**  Now, I mentioned the reservation of

4    rights in the brief that was filed at pages 16 and 17.  The

5    Lake County defendants reserved their right to restrict *Tango*

6    based on content analysis, and the Eleventh Circuit has held

7    several times that when a party reserves its right to repeat

8    the same challenged conduct or continues to defend the

9    constitutionality of that conduct, it's not the unambiguous

10   cessation that would be necessary to establish mootness.

11           And for that reason too not only do they not try to

12   meet their burden that their conduct could not be expected to

13   recur, they reserve the right that their conduct may recur, and

14   that's why it's so essential to safeguarding the rights of

15   plaintiffs that a PI be entered.  There is imminence of

16   re-restricting the book, which would, the moment the

17   restriction is applied, inflict per se irreparable harm.

18           By contrast Lake County, if it is sincere -- if its

19   actions go beyond its words and it does, in fact, keep the

20   restriction lifted -- in that case there would be no cost to

21   Lake County of being enjoined.  So just by a simple balance of

22   the equities, the risk of irreparable harm compared to no harm

23   to the defendants militates in favor of granting preliminary

24   relief here.

25           If Your Honor would like, I'm happy to address the

brief arguments they make regarding timeliness.

**THE COURT:** Yes, please.

**MR. SIEGEL:** I would just note, as we set forth in our brief, the courts in this circuit, courts nationwide have reached a consensus that delay is not a factor in irreparable harm when a First Amendment injury is asserted; and in light of that case law, there's no need for the Court to even reach the question of whether there was delay.

If the Court were to reach that question, however, there is no delay in this case. The student movants have alleged a future time when they intend to check out the book, which is exactly what *ACLU v. Miami-Dade* says is necessary. And the authors have suffered an ongoing injury, and in cases of ongoing injury, delay, even when it is a factor, is not a significant factor.

Lastly, there's no allegation that delay in any way prejudiced Lake County, and for that reason it offers no support to their case.

**THE COURT:** All right.

**MR. SIEGEL:** Unless Your Honor has any further questions --

**THE COURT:** I may have some, but at the moment I don't. Thank you.

**MR. SIEGEL:** Thank you, Your Honor.

**THE COURT:** And on behalf of the defendants,

1    Mr. Broome.

2              **MR. BROOME:**  Yes, Your Honor.

3         Good afternoon, Judge.

4              **THE COURT:**  Good afternoon.

5              **MR. BROOME:**  Your Honor, at its heart what we're here

6    about is a request for preliminary injunction, and the reason I

7    make a point starting there is because the reply brief that was

8    filed by the plaintiffs as well as the argument made today,

9    essentially, tries to attack this burden on mootness as opposed

10   to addressing their own extraordinary burden.

11        A request for preliminary injunction is not a

12   shortcut to circumventing an argument on a motion to dismiss

13   with prejudice which would be forthcoming or a motion for

14   summary judgment or something similar.  They have the burden of

15   meeting not one, not two, not three, but all four prongs of a

16   request for preliminary injunction -- injunction.  That is

17   their burden.

18        And the mootness argument goes to those prongs, but

19   at the end of the day, they're here as the movant.  They're

20   here with the burden.  And the reason that's relevant, Judge,

21   is --

22        Actually, working our way backwards from the

23   irreparable harm, their own case law that they cited in their

24   reply -- they refer to two cases in particular: the *Health*

25   *Freedom Defense Fund v. the President*.  That's 71 F.4th 888, an

Eleventh Circuit 2023 case. And the *Franciscan v. Becerra*, 47 F.4th 368, a Fifth Circuit 2022 case.

And the reason those are so relevant, Your Honor, as pointed out in our response but here they're acknowledging, when there is no remedy that the Court can give other than what's already happened, it's moot. It's inappropriate.

And, in fact, they talked about -- the health mandate case was about the COVID-19 mandates where the plaintiffs had filed suit asking for removal of some of these health mandates. The mandate had already ceased to exist, and the Court said, "We have no business ruling here. The exact harm you've complained about doesn't exist anymore."

What's undisputed is that the age restriction that is complained about in the complaint and the motion for preliminary injunction doesn't exist as to the book in question. Again, they talked about, in oral argument and the complaint, 40 books, but really their injunction is about one book: *Tango Makes Three*. And what's undisputed is the age restriction doesn't exist.

And one thing I want to point out for the Court, because this word gets thrown around a lot: "removal." Simply put, it's not factually accurate. The book never left a single shelf. There was an age restriction in the -- what's called "Destiny system" that allows the librarians to see things about the books, but the book was never removed. All that happened

1  was, administratively, the superintendent, in light of HB 1557,

2  made an interpretation and applied an age restriction to those

3  grades pursuant to that statute.

4        When she learned that the state's position was

5  HB 1557 --

6        THE COURT:  So you will agree that it was removed

7  relative to children under that age restriction as a practical

8  matter?

9        MR. BROOME:  Again, removal, Judge -- the book never

10  left the shelf.

11        THE COURT:  That's -- whether it's physically on the

12  shelf or not, we're really talking about availability.  It's

13  not physical presence.  Was the book available or not when the

14  superintendent issued the order -- the ruling that it should be

15  removed pursuant to the legislation?

16        MR. BROOME:  For certain students, yes.  None of the

17  named plaintiffs.  And I think that's also important, as we

18  cite in our response.

19        THE COURT:  Named plaintiffs in the preliminary

20  injunction motion?

21        MR. BROOME:  Any of them, Judge, but especially the

22  preliminary injunction --

23        THE COURT:  Okay.

24        MR. BROOME:  -- because --

25        THE COURT:  Tell me why that's the case.

1    **MR. BROOME:** I apologize, Your Honor?

2    **THE COURT:** I said tell me why that's the case.

3    **MR. BROOME:** So as noted in our affidavit, this book,

4    there's only three copies in the entire Lake County school

5    district. And two of those copies were at one school. One

6    copy is at another. None of them were at Beverly Shores, which

7    is actually where any of the plaintiffs attended school.

8            And, furthermore, as we noted in the affidavit, since

9    November 1st of 2022, before the restriction was put in place,

10   none of the students had done what's called an interlibrary

11   check out. So we know for a fact that the students did not --

12   **THE COURT:** I hear you. I understand that idea that

13   goes to, I think, injury. But let me -- let me ask this

14   question. If a child -- if one of these plaintiffs walked into

15   the children -- walked into the library and asked the librarian

16   for *Tango Makes Three*, which is typically how I imagine a

17   kindergartener would ask for a book out of a public school

18   library, are you suggesting that because the book was only

19   available through interlibrary transfer that it's not available

20   or was available?

21   **MR. BROOME:** Your Honor, as to the plaintiffs, both

22   to the timeliness, the standing, and the irreparable harm

23   issue, the issue just simply doesn't exist is the best way to

24   describe it because they would have had to have physically

25   asked a librarian for an interlibrary loan because the book was

1   not physically on a shelf because it was not put there.  So

2   they'd have to go to a librarian and request it.  That simply

3   didn't happen during the last school year.

4           And the discussion about the delay is relevant

5   because it didn't happen last year.  We're now in the summer

6   session.  The change on the policy -- or the administrative

7   removal of the age restriction has occurred before school

8   starts back.  None of these plaintiffs ever had an opportunity

9   to be harmed.

10          **THE COURT**:  Well, I am moving to a point in time

11  where they have the opportunity and the opportunity is going to

12  be sufficient.  I'm just trying to understand how --

13          **MR. BROOME**:  Sure.

14          **THE COURT**:  -- you are categorizing the restriction

15  or not, because what I thought you were about to tell me is

16  that because this book was only available through an

17  interlibrary procedure requiring transfer, that somehow it's

18  either not available or is available.  And those facts, to me,

19  suggest that if it's available through an interlibrary transfer

20  process, it's available.

21          Are you arguing that it's not available because it's

22  subject to an interlibrary transfer process?

23          **MR. BROOME**:  Generically, if it's requested through

24  interlibrary, it would be available to you, Judge.

25          **THE COURT**:  What do you mean "generically"?

1　　　　　**MR. BROOME:**  Again, Your Honor, because, I think, in

2　　the interlibrary loan question as to the case that's been

3　　brought by these plaintiffs, we would know for a matter of fact

4　　whether that occurred or not, and it simply didn't.

5　　　　　**THE COURT:**  Well, I realize it didn't, but I'm --

6　　could it?

7　　　　　**MR. BROOME:**  In a hypothetical situation, it could.

8　　　　　**THE COURT:**  Okay.

9　　　　　**MR. BROOME:**  And, again, though, Your Honor, coming

10　　back to what we're here about, which is exactly that, could it?

11　　On the request for preliminary injunction, could it?  And

12　　that's already been resolved.  At this point it did not matter

13　　if they're at the school or not, whether they do interlibrary

14　　loan or they're at now the school that has the copy.  They

15　　could go check it out.  Their exact relief is resolved.

16　　　　　**THE COURT:**  Now, let's talk a little bit more about

17　　that because I do understand that argument and the point that

18　　you are making about it, and part of my questioning to

19　　plaintiffs' counsel had to do with that.

20　　　　　Why is -- why is this brief filed in another lawsuit

21　　sufficiently probative of what Lake County will do or not do

22　　that I should give it weight?

23　　　　　**MR. BROOME:**  Sure.  And, Judge, I think it's because

24　　the issue isn't so much the brief itself.  It's the reality

25　　that in this case, unlike a lot of other cases, Lake County did

1    not informatively go out and say, "We're going to prohibit

2    content because we don't like the content."  They said, "This

3    statute has a restriction, and so based on our understanding of

4    that, we're going to age restrict that content."

5         Now, their governing body, the State Board of

6    Education, has provided them with a legal position in federal

7    court where they say, "This statute -- the definition of

8    classroom instruction doesn't apply to library books."

9         And so the superintendent, in light of that legal

10   guidance, said, "We're out here on our own.  We're bringing

11   ourself into compliance with that interpretation."

12        **THE COURT**:  So what is to prevent the parties in this

13   *Cousins* case -- the Department of Education, for that matter --

14   to say, "Well, we've revisited this and," consistent with what

15   I understand your position to be as articulated by the

16   plaintiff, "that with respect to content analysis, for example,

17   we've changed our decision about this restriction, and we now

18   want it to not be available to children under the age of four."

19        **MR. BROOME**:  Sure.

20        **THE COURT**:  Why is that not something that could

21   happen?

22        **MR. BROOME**:  Well, and I'll kind of -- as a brief

23   note, I'll come back to it in just a second.  Their

24   characterization of our 16 and 17 and the content restriction

25   isn't accurate.  Okay?  So I'll come back to that in a second.

1    But the primary purpose, Judge, would be a few

2    things, and one would be judicial estoppel.  You can't take a

3    position in one case to achieve a result and then turnaround

4    and take a completely contrary position to achieve a different

5    result.

6    Number two, this case is actively pending.  If we as

7    the Lake County defendants file a response to the preliminary

8    injunction that we have taken this action, there is no

9    injunction entered because it's moot, and then we turn around

10   and reinstitute the action before the motion to dismiss is

11   heard, then the Court would be looking at the *Jews for Jesus*

12   case where you'd say, "This kind of flip-flopping -- you've now

13   lost that presumption that this was done with good intent."

14   I think, Your Honor, the vast majority of the

15   Eleventh Circuit cases on this point do go to that, that when a

16   school district or any governmental body takes corrective

17   action, the Court gives them a presumption that they're doing

18   so with the intent to correct it and that they're not going to.

19   I think the only case that we could find where they said

20   "actively know" was the *Mesquite* case, where the City actively

21   said on the record, "We're just going to pass this, and as soon

22   as we get what we want, we're going to do it again."  That

23   doesn't exist here.

24   You have a superintendent saying, "Here's legal

25   guidance.  I'm going to follow it."  So absent evidence that

that was done in bad faith or purely for trickery or anything like that, as a governmental actor, that's supposed to be taken with good faith.

But coming back to 16 and 17, Your Honor, what we were pointing out there is exactly the problem with -- as framed on oral argument and the request for an injunction, is a blanket restriction that a school district could never content redistrict the book they're claiming about. That, Your Honor, is simply not the standard. We're not suggesting that 1557 allows us to do that. But the Orange County case and all the other cases, the Miami-Dade case about the Cuban book -- they all are very clear. School districts have an inherent right to evaluate the content of books.

If they're violating the law when they then engage in content restriction, that's a different issue. What we're here about in this case and this motion was the Lake County school district applied, citing HB 1557, an age restriction. They have subsequently removed that, and they've expressed no intent, shown no evidence that we intend to go back and say, "You know what? We were wrong. That statute, in fact, does mandate us to do this."

And, Your Honor, I'd actually point out we're arguing about one portion of that statute. There is an entire portion of the statute not challenged in this case where parents and members of the community can advocate for restrictions on

books.  That's not even at issue in this case.  So a blanket assertion that this school district could never engage in a content restriction is simply not the legal standard.  That goes way beyond what is actually allowable relief.

What they asked for was to remove the HB 1557 age restriction as to this book.  That is what currently exists in front of this Court as an undisputed fact, is that the age restriction, based on HB 1557, no longer exists.  That book, if you were to go into school on the first day of school and go to a library and say, "I want to check this book out," as long as it's there and someone else hasn't checked it out, you can check it out.  That is the --

**THE COURT:**  Or if it's available by interlibrary transfer.

**MR. BROOME:**  Yes, Your Honor.  As long as it is available on the shelves, they are not going to say, "Hey, this statute controls."  That's what's at issue.  That's what's been removed.

And that's, Your Honor, why we pointed out, even their own case law that they cited in their reply, if what you're requesting is identical to what's already occurred, that is the definition of mootness.  And that's what's happened here.  They said in their motion, "We want you to remove the age restriction on this book," and that is what's undisputedly occurred.

1            Now they're saying, "Well, wait a second.  We think

2      in the future -- this is just a sham.  You can come back and

3      put something else on it. So we want, essentially, an advisory

4      injunction that should you do something in the future, that

5      this injunction will exist."

6            And, Your Honor, in our brief we went at length that,

7      like the *Siegel* case, to get an injunction, they use the phrase

8      immediate concrete harm is the sine qua non of an injunction.

9      They don't have that here.

10           **THE COURT**:  They argue, do they not, that the First

11     Amendment violation is immediate and irreparable and there's

12     legion case law to support it?

13           **MR. BROOME**:  And, Your Honor, our position would be

14     that's talking about the injury that has already occurred, not

15     a prospective harm.  In this case -- and that goes back to why

16     I was going through a minute ago the timeliness of this.  There

17     is not a single student --

18           **THE COURT**:  I know you have to go to the timing to

19     try to avoid that application of law.

20           **MR. BROOME**:  Well, no, Your Honor, because the

21     injunction would be looking forward.  They're asking you to

22     rule to give an injunction on an entirely conjecture argument

23     that we will simply reverse the position we've taken, and under

24     the law that is black-letter not the case.

25           We cited numerous cases, again, *Siegel* being the most

1    commonly cited than all the others, that you must have a

2    concrete harm.  You can't simply suggest or conjecture that the

3    harm will be repeated.  In fact, the Eleventh Circuit -- the

4    *Jews for Jesus* case that has been cited repeatedly said, "We

5    don't think it's appropriate to simply assume bad faith on the

6    part of the government, that if we were then to flip-flop that

7    position, the plaintiffs have remedies."  Number one, the case

8    is still pending.  Number two, if there's a dismissal with

9    prejudice and then we were to change position, they could come

10   right back to the court system.

11          But going a step further and saying, "Hey, this harm

12   doesn't even exist currently, but on the off chance you do it

13   in the future, we're going to grant an injunction."

14          That's essentially what they're asking this Court to

15   do, is to say that even when the Government has taken

16   remediation, even if the harm is identical -- excuse me -- the

17   relief request is identical to what's already occurred, we

18   still just want an injunction, and that is not what the case

19   law provides for.

20          And, Your Honor, we talked about this repeatedly --

21   the timeliness of this.  They're arguing that it happening so

22   quickly, in their argument, according to their own complaint

23   being filed -- that actually goes against all the other cases

24   even cited in their own reply.  But we would point out,

25   Your Honor, they cite to *Jews for Jesus*, in the three years,

that there's a rind on it.  Well, what's ironic about that is that was the exact same argument raised in the Orange County *Freedom from Religion* case that we cited in our response.  And the Court made a point of pointing out that that argument misreads the case, because in *Jews for Jesus*, the Hillsborough County authority lifted the restriction at issue within the first month.  It just took three years for the appellate court to finally render their ruling.  But the idea is, in fact, the reverse, that when government acts with alacrity, that that should be presumed that they're acting in good faith.

And so our position here, Judge, is it's all moot.  Now, whether they think there is an injury that has already occurred that they want to try and address at the motion to dismiss stage, that's for another day and another hearing.  But as we're sitting here on the request for preliminary injunction, what is undisputed is that the harm that they're asserting about this content -- this age restriction on this particular book has been lifted.  The Court can't give them anything different than what they have other than a prospective relief based on conjecture, and that simply is not what the law allows.

So our position is, Your Honor, that it's moot and that, frankly, that goes to both the question of harm but also, Your Honor, going back where we started, the substantial likelihood of success.  They're arguing burden of proof on

mootness as if this is a motion to dismiss with prejudice. Our position is that simply goes to whether they will ultimately prevail because, as was replete in our motion, mootness goes to the heart of whether this Court even has jurisdiction because if the case or controversy doesn't exist, anything the Court adjudicates is an advisory opinion.

And the reason that's especially relevant on this injunction, Your Honor, is Lake County does not have some independent body of analysis that they're challenging here. What they challenged was that Lake County age restricted based on HB 1557. Ultimately, the constitutionality of 1557 will be litigated on the merits of the case, but you can actually have a situation where that statute doesn't apply to library books and is simultaneously constitutional, and that's what Lake County was achieving by what they did on June 21st by saying, "We're removing that HB 1557 mandates a certain conduct." That was the course correction, Your Honor.

It's not that we even content restricted to begin with. We were applying a statute. Our understanding was apparently incorrect, and we then course corrected based on the guidance that we received from the other federal court case by the Board of Education.

So, Your Honor, again, if you have other questions about it -- but we believe that cases like the *Troiano* case, the *Siegel* case, *Coral Springs* -- all of these cases are

replete where the government was threatened with litigation or litigation was filed, took a course correction, fixed the exact harm that was complained about, and the Court said that is the definition of mootness. And, as I indicated, that is actually consistent with their own case law that where -- and like in the *Franciscan* case and in the *Health* case, when a challenged rule is replaced with a new rule, the case is moot when it gives you the exact relief you're requesting. That's what happened here.

The injunction is only being argued based on pure conjecture that the school district will do it again, and that is simply not enough for this Court. Thank you, Judge.

**THE COURT:** Let me ask you a couple questions.

**MR. BROOME:** Yes, sir.

**THE COURT:** Talk to me about the idea of substantial deliberation in measuring the decision-making of the government and whether the Court is to consider it to be a sufficiently firm and clear and, you would argue, irreversible decision for the Court to give it weight. Are you familiar with those cases?

**MR. BROOME:** Yes, Judge. And I would say what's unusual about this case compared to the others is the HB 1557 restriction, again, was not a -- there was not a policy where the School Board sat down and said, "Do we like this or not?" It was done administratively as what they viewed as legal

1    compliance the same way it would if the state issued, "Hey, now

2    we've got to put 13 smoke directors in every cafeteria." That

3    would not be something the Board deliberated. It was a "We're

4    going to institute this."

5         So, similarly, when they were advised that was an

6    incorrect interpretation of the statute that classroom

7    instruction does not apply to library books, the decision to

8    course correct was similarly made administratively. I don't

9    think that in this particular case there would be further

10    deliberation that would show evidence because, again, it was

11    not deliberated to impose to begin with.

12         **THE COURT:** The other factor that is argued has to do

13    with whether or not the decision was unambiguous. What's your

14    position with respect to that?

15         **MR. BROOME:** Your Honor, our position is it's

16    patently unambiguous. The school district through the

17    superintendent removed the restriction. There was no --

18         **THE COURT:** She says that it does not apply and it

19    will not apply. Is that -- let's look at her testimony for a

20    moment.

21         **MR. BROOME:** Sure. I don't have her affidavit. I

22    can pull it up right here.

23         **THE COURT:** Let's see. I think I have it.

24         **MR. BROOME:** Your Honor, paragraphs 16 and 17 --

25         **THE COURT:** Give me a minute to get to it.

1          **MR. BROOME:**  Yes, Your Honor.

2          **THE COURT:**  It's at the very end of her testimony.

3    She says HB 1557 age restriction is removed.  "It is and will

4    continue to be my directive, as School Board's designated chief

5    executive, that all School Board personnel follow the law."

6    She removed the age restriction and says that she did and will.

7    That's sufficient in your opinion?

8          **MR. BROOME:**  Yes, Your Honor, because from our

9    standpoint her changing her stance would require the school

10   district, as I was indicating a minute ago, to simply say,

11   "Yes, we course corrected, but we're just throwing that out";

12   that "We're going to now decide that we no longer agree with

13   all these others districts that have taken this position.  We

14   no longer agree with the State Board of Education.  We're

15   simply going to go our own way."  And that is simply a pure

16   conjecture.  That would require us to completely throw out --

17          And, as I indicated, we're in a pending litigation.

18   If the Court denies the injunction and we file a motion to

19   dismiss where we simply change back to HB 1557 applies, then

20   the Court would no longer give us any sort of deference on

21   mootness.  That would make no sense.

22          She's saying, "I'm going to follow the law," and

23   that -- that's where this guidance comes into play.  The

24   statute says "classroom instruction."  So that's what we're

25   doing, is we've removed the restriction from the library books.

1        And, Your Honor, again, I was looking at -- going to

2    the *Health Freedom* case, administratively, when it ceases to

3    exist, I don't think there has to be some sort of formal

4    deliberation.  When you change -- when you've decided, "We're

5    going to comply with the law," I don't think that substantial

6    deliberation comes in as hefty as in all the cases where you

7    had boards or governing bodies deliberating and passing these

8    content restrictions.  I think the remedy should fit how it was

9    imposed.  And so in our case, Your Honor, because it was

10   administratively imposed, it can be administratively corrected.

11       So -- but that, again, Your Honor, goes back to the

12   heart of the -- what they're citing on 16 and 17.  It's

13   speculation, but the Board has inherent authority on content,

14   but that's not what we're here about.  That would require the

15   Board to affirmatively come up with a policy just, again,

16   purely speculating.  That has no bearing on HB 1557 or what's

17   in front of you today.  That's -- our position on that was

18   simply --

19       **THE COURT:**  Or the Department of Education to --

20   pursuant to this idea that they maintain a right with respect

21   to this book in this library to address its content and use its

22   content as a basis of regulating its availability.

23       **MR. BROOME:**  I don't -- Your Honor, I would disagree

24   with that because I think our position is HB 1557 -- what

25   happened in this case is HB 1557 was interpreted by Lake County

1  as applying to library books, which HB 1557 --

2  THE COURT: Pursuant to the Department of Education's

3  statement that it should.

4  MR. BROOME: Well, that was pursuant to a manual

5  about educators acting carefully and conservatively and

6  implementing HB 1557 as well as other statutes.

7  What we've been given as clear guidance in the

8  *Cousins* case and the reason it's so irrelevant is the state has

9  clearly enunciated in federal court filings that HB 1557 does

10  not apply to library books. So I think that's more than a

11  casual --

12  THE COURT: How have they done that? That's my

13  point. Is that an argument that's being made, or is there a

14  Department of Education rule that says that this law does not

15  apply to school libraries?

16  MR. BROOME: That is their official legal position in

17  their pleadings in a pending federal case, that they -- that

18  was their basis in --

19  THE COURT: What governs the Department of Education

20  in its executive -- in meeting its executive runs? Don't they

21  act through regulation? I'm not sure -- I'm confessing my

22  ignorance now about administrative law. I'm not sure how the

23  Department of Education gets any school system or school

24  official to do anything officially. How does that happen?

25  MR. BROOME: It's traditionally through rulemaking,

1       Your Honor.

2              THE COURT:  And was this a rule?

3              MR. BROOME:  No.  To be clear, it was not a rule

4       either way.  It was neither a rule stating that it applies to

5       libraries nor was it a rule that it does not.  The Lake County

6       school district interpreted -- and, again, when I talk about

7       guidance, we're talking about -- this would be pamphlets.  Here

8       it was a PDF of a PowerPoint presentation.  It was not

9       rulemaking to begin with.

10             And the clear citation that the law does not apply to

11      library books was in a legal memorandum filed in the *Cousins*

12      case as part of their basis for dismissal.

13             THE COURT:  Okay.  All right.

14             MR. BROOME:  So, again, just coming back to that,

15      Judge, I think with all of this, the problem for the Court

16      today is there is no concrete injury pending.  The request for

17      relief on the face of the preliminary injunction was to remove

18      the restriction on the book *Tango Makes Three*.  There is, as we

19      sit in this courtroom, no age restriction on the book *Tango*

20      *Makes Three*.  That's exactly what they've asked for.

21             The argument made in the reply and the argument made

22      in oral argument is "Well, yeah, but you might change your

23      mind."  That's simply too much conjecture for an extraordinary

24      remedy.  This is a preliminary injunction.  This is not a

25      motion to dismiss.  They are asking this Court to grant

1     extraordinary relief based on pure lawyer hypothetical and

2     say-so.  So, Your Honor, we believe the motion should be

3     denied.

4              **THE COURT**:  All right.  Thank you, sir.

5              Mr. Siegel, it is your client's burden.  I'll hear

6     from you.

7              **MR. SIEGEL**:  Thank you, Your Honor.  I'd like to

8     address a number of points that opposing counsel raised in

9     argument.

10             First, you heard repeated references to burdens and

11    to conjecture.  You heard repeatedly that we have raised

12    conjecture about whether conduct would recur.  That completely

13    ignores the governing law that Lake County bears the burden to

14    show it is absolutely certain that its actions could not

15    reasonably be expected to recur.  They are the ones who have to

16    put forth some evidence of that, evidence that there was

17    deliberation behind their decision, that the decision was an

18    unambiguous policy, and that they have achieved commitment to a

19    new policy.  And they haven't given you a showing on any of

20    these points.

21             You also heard that we have tried to shift the burden

22    by taking what is our burden on a PI motion and place it on

23    them because they assert mootness.  That's -- that's playing

24    fast and loose with the governing law.

25             We, in our opening brief, established our burden; and

1   Lake County chose in their brief not to address our First

2   Amendment arguments at all, to make no argument on irreparable

3   harm other than timeliness, and to make no argument on the

4   merits other than mootness.

5           As I highlighted earlier, timeliness is beside the

6   point in a First Amendment case, and as to mootness, the burden

7   does lie on Lake County, which is why we have argued it that

8   way.

9           You heard a couple times that plaintiffs have

10  received all the relief that they asked for, and that's simply

11  not true.  Our preliminary injunction motion on its face asks

12  for an order that Lake -- that Lake County remove the age

13  restriction on *Tango* and keep that age restriction lifted

14  throughout the pendency of this action, and they have

15  scrupulously taken every step they can to avoid telling you

16  that they're going to do that.  They've pointed to DoE filings.

17  They pointed to an affidavit that says they've lifted the

18  restriction but does not say that they will continue to keep

19  the restriction lifted.  They pointed to their right to

20  discriminate based on content.  For all those reasons, there's

21  no assurance whatsoever that the book is going to remain in

22  schools, remain accessible to all ages; and, therefore, we

23  haven't received the relief that we asked for in the PI.

24          Next, I want to address a couple of references to

25  flip-flopping.  Opposing counsel mentioned several times the

*Jews for Jesus* case and the *Freedom from Religion* case. It's
correct that in each of those cases the Court says that a
history of flip-flopping would undermine an argument of
mootness, but that flip-flopping is exactly what has happened
here at the district level and at the DoE level.

In December DoE files its brief in *Cousins* where it
says that 1557 does not apply to library books, but then just
one month later, in January, it gives the training that
Ms. Kornegay references in paragraphs 13 and 14 of her
affidavit where DoE tells school districts err on the side of
caution in selecting and maintaining library materials. That
appears to be DoE's position until one day after this
litigation is filed where on a dime DoE turns around, digs up
its six-month-old brief, and, for the first time, sends it to
Lake County, even though there's been wide media coverage of
Lake County's restrictions for months, at least since January.

But DoE has a history of flip-flopping, and if you
look at Ms. Kornegay's affidavit, paragraph 18, which
Your Honor quoted from earlier, where she says it will continue
to be her directive to "follow the law" coupled with her
statements in that affidavit that her attempts to follow the
law have always been to follow DoE guidance means that the
flip-flopping by DoE is going to mean more flip-flopping by the
district. And when there is that risk of flip-flopping,
defendants' own cases tell us that a case is not moot, a motion

1    is not moot, and preliminary relief is appropriate.

2           I do also want to clean up one mischaracterization of

3    our complaints that came up numerous times in opposing's

4    argument.  It was said several times that we have said they

5    restricted the books based on HB 1557 and nothing else.  That's

6    simply not the case.  We have pleaded in our complaint that the

7    restriction was based on 1557 and based on viewpoint

8    discrimination.  And while you heard some defenses of

9    Lake County's right to engage in content discrimination, you

10   did not hear any defense or right to engage in viewpoint

11   discrimination, and they couldn't mount such a defense because

12   it is black-letter law that even in school libraries viewpoint

13   discrimination is unconstitutional.

14           There's simply no official policy that has been

15   adopted that could provide any comfort, any assurance that Lake

16   County will continue to keep the age restriction tag on *Tango*

17   lifted.  They haven't committed to doing so in their briefing,

18   in their affidavit, in their arguments today; and absent such a

19   commitment, they can't bear their burden to show it is

20   absolutely certain that their conduct will not recur.  Simply,

21   the actions of DoE and another case six months ago that weren't

22   raised until this litigation was filed cannot provide any

23   assurance.

24           As Your Honor highlighted, DoE could act through

25   rulemakings.  It has not done so.  Instead, it has acted only

1     through shifting litigation positions.  And although opposing

2     counsel said judicial estoppel would hold them to that

3     position, that's simply wrong.  Judicial estoppel applies

4     within a case.  It does not apply to what goes on in another

5     case, what goes on in a rule-making.

6         So for that reason, with neither assurance from DoE

7     nor assurance from Lake County that the age restrictions on

8     *Tango* will not be reimposed, and based on our undisputed

9     argument that reimposing those restrictions would instantly

10     impose an irreparable harm on plaintiffs, we would respectfully

11     ask that this Court grant the requested preliminary injunction.

12     **THE COURT**:  All right.  Thank you, Mr. Siegel and

13     Mr. Broome, for your argument today.  I appreciate them.  They

14     have been well-stated, and the Court will issue a ruling in due

15     course.  Thank you.  We're in recess.

16     (Proceedings concluded at 2:01 P.M.)

17     -oOo-

18     **CERTIFICATE OF REPORTER**

19     I certify that the foregoing is a correct transcript of the
record of proceedings in the above-titled matter.

20

21     _____

22     Heather Suarez, RMR, CRR, FCRR, FPR-C, WA CCR
U.S. Official Court Reporter

23     United States District Court
Middle District of Florida

24     Date:  08/02/2023

25