UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PETER PARNELL, et al.,

       Plaintiffs,

vs.                   CASE NO.:  5:23-cv-00381-BJD-PRL

SCHOOL BOARD OF LAKE COUNTY,
FLORIDA, et al.

       Defendants.

_____/

**DEFENDANTS, ESCAMBIA COUNTY SCHOOL BOARD'S
AND KEITH LEONARD'S TIME-SENSITIVE MOTION
TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF FLORIDA
AND INCORPORATED MEMORANDUM OF LAW**

Defendants, Escambia County School Board and Keith Leonard, Superintendent of the Escambia County School District, in his official and individual capacities, file this Time-Sensitive Motion to Transfer Venue to the United States District Court for the Northern District of Florida, Pensacola Division, and respectfully request adjudication prior to consideration of Plaintiffs' Motion for a Preliminary Injunction, [D.E. 62], and in support thereof state:

## I.    BACKGROUND AND INTRODUCTION

Plaintiffs in this case challenge, inter alia, the decision the Escambia County School Board ("Board") to remove a book from the libraries within the Escambia County School District ("District"). [D.E. 61]. They have named as Defendants the

Board and Superintendent Keith Leonard, in both his official and individual capacities (collectively, "Escambia County Defendants"). *Id.* at ¶¶ 26–27. As shown below, Plaintiffs' claims and requests for relief overlap with ongoing litigation in another federal district in Florida, i.e., *Pen American Center, Inc. v. Escambia County School Board*, Case No. 3:23-cv-10385 (N.D. Fla.).[1]

The minor Plaintiff B.G. is a resident of Escambia County and attends school within the District. [D.E. 61 at ¶ 20]. The actions attributed to the Escambia County Defendants that Plaintiffs challenge—and which, through their Motion for Preliminary Injunction, they seek to enjoin—all took place in Escambia County; so too do the witnesses and evidence that would either support or refute these claims reside there. *Id.* at ¶¶ 87–112. Accordingly, pursuant to 28 U.S.C. § 1404(a), the Escambia County Defendants respectfully submit that both "the convenience of the parties and witnesses" and "the interest of justice" justify transferring this matter from the District Court for the Middle District of Florida ("Middle District") to the District Court for the Northern District of Florida ("Northern District").

Pursuant to Local Rule 3.01(e), this Motion is designated time-sensitive given Plaintiffs' pending Motion for Preliminary Injunction, [D.E. 62], the

---

[1] Plaintiffs in that case also challenge the actions of the Board in removing books from the District's library shelves, including the book at issue in this case. *See id.*, ECF No. 27 at ¶ 105 (listing *And Tango Makes Three* as among the "Removed Books" plaintiffs seek restored to the District's library shelves).

Escambia County Defendants' Response to which is due September 8, and which is set for hearing on September 15. [D.E. 64]. Because the Escambia County Defendants believe this matter should be transferred to a more appropriate venue, they respectfully request the Court expedite ruling on this Motion prior to the hearing on Plaintiffs' Motion for Preliminary Injunction. Namely, Plaintiffs' Motion asks this Court to find they have a substantial likelihood of success on the merits for their claims against the Escambia County Defendants. However, if this Court agrees that the Northern District is a more appropriate venue and transfers this matter, then that court will be the appropriate venue to hear Plaintiffs' Motion for Preliminary Injunction and issue any ruling.

The Escambia County Defendants have met and conferred with the other parties to this matter. The Lake County Defendants consent. The Florida State Defendants consent. Plaintiffs object.

## II.   <u>ARGUMENT</u>

### A. Transfer Standard Under 28 U.S.C. § 1404(a)

"Pursuant to 28 U.S.C. § 1404(a), '[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.'" *Bachstein v. Discord, Inc.*, 424 F. Supp. 3d 1154, 1157 (M.D. Fla. 2019) (alteration in original) (quoting 28 U.S.C. §

1404(a)). The primary purpose of this statute is to "avoid unnecessary inconvenience to the litigants, witnesses and the public, and to conserve time, energy, and money." *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007); *see also Kelling v. Hartford Life & Acc. Ins. Co.*, 961 F. Supp. 2d 1216, 1218 (M.D. Fla. 2013) ("The overarching purpose of § 1404 'is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964))).

"An action might have been brought in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." *Kelling*, 961 F. Supp. 2d at 1219 (quoting *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985)). This action could have been brought in the Northern District: it would have subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as Plaintiffs' alleged claims arise under the Constitution and laws of the United States; venue would be proper there because the Escambia County Defendants are residents of the Northern District and, upon information and belief, all other Defendants are residents of Florida, *see* 28 U.S.C. § 1391(b)(1); and finally, the Escambia County Defendants—as well as all other

4

Defendants—are amenable to process issuing out of the transferee court. Thus, the question becomes whether the Northern District is a more convenient venue.

To determine whether a proposed transferee court is more convenient, courts must conduct a "complex inquiry that takes into account several competing public and private interests at stake." *Esfeld v. Costa Corciere, S.P.A.*, 289 F.3d 1300, 1311 (11th Cir. 2002). The Eleventh Circuit has identified nine factors relevant to the court's decision to transfer a case:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). And while generally a plaintiff's choice of forum should not be disturbed unless clearly outweighed by other considerations, "where a plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper." *Suomen Colorize Oy v. DISH Network L.L.C.*, 801 F. Supp. 2d 1334, 1338 (M.D. Fla. 2011) (quoting *Celluravision*, 508 F. Supp. 2d at 1189); *see also Martinez v. Shulkin*, No. 1:17cv128-MW/CAS, 2017 WL 10821303, at *1 (N.D. Fla. Aug. 2, 2017)

5

("And while the plaintiff's choice of forum is generally given considerable deference, that choice is not entitled to the weight it is generally accorded where there is no material connection between the forum and the events underlying the cause of action." (cleaned up)). "Furthermore, '[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.'" *Suomen Colorize Oy*, 801 F. Supp. 2d at 1338 (alteration in original) (quoting *Garay v. BRK Elecs.*, 755 F. Supp. 1010, 1011 (M.D.Fla.1991)).

Here, B.G.'s home forum is the Northern District, [D.E. 61 at ¶ 20]; the Middle District, by contrast, is a foreign forum for her.[2] Given Plaintiffs' choice of a foreign forum, this selection is entitled to little deference. Moreover, the vast majority of operative factual allegations that are the subject of Plaintiffs' Amended Complaint and Motion for Preliminary Injunction—including all those relating to the Escambia County Defendants and Florida State Defendants, as well as all claims raised by Plaintiff B.G.—occurred in the Northern District. This further decreases any deference owed to Plaintiffs' choice of the Middle District. And as shown below, the other relevant factors all weigh heavily in favor of transferring this action to the Northern District.

---

[2] Plaintiffs Parnell and Richardson are domiciled in New York, [D.E. 61 at ¶¶ 17–19], making the Middle District a foreign forum for them as well.

6

### B. Convenience of the Witnesses

"The convenience of both the party and non-party witnesses is probably considered the single most important factor in the analysis whether a transfer should be granted." *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1264 (S.D. Fla. 2013). Here, while witness lists have not been produced nor have initial disclosures been filed, it is nonetheless apparent that the relevant party and non-party witnesses—i.e., the Board and Superintendent Leonard, as well as any District staff or individuals identified in Plaintiffs' Amended Complaint, *e.g.*, [D.E. 61 at ¶ 87 (identifying District teacher who filed objections to *And Tango Makes Three*)], who are called to testify, and B.G.—are all residents of the Northern District. So too are the Florida State Defendants in their official capacities as members of the Florida State Board of Education. *See Sch. Bd. of Hernando Cnty. v. Rhea*, 213 So. 3d 1032, 1038–39 Fla. 1st DCA 2017) (discussing home venue privilege available to governmental entities under Florida law). Plaintiffs Parnell and Richardson's New York domicile is neutral in this regard.

By contrast, Plaintiffs have not identified—and under information and belief the Escambia County Defendants aver there do not exist—any witnesses regarding the actions of the Escambia County Defendants that reside in the Middle District. Given the impending hearing on Plaintiffs' Motion for Preliminary Injunction—directed solely at the actions of the Escambia County Defendants—

this factor takes on even greater importance should the hearing be evidentiary in nature, requiring in-person testimony. In such an instance, it will be far more convenient for the witnesses for this matter to be venued in the Northern District, especially because maintaining this action in the Middle District means the Escambia County Defendants will "not likely to be able to compel [non-District witness'] attendance without using the subpoena power," *Osgood*, 981 F. Supp. 2d at 1264, requiring significant amounts of travel and expense for these witnesses.

While Plaintiffs challenge actions of the Lake County School Board, any inconvenience to them is outweighed by the fact Plaintiffs are actively seeking a preliminary injunction against the Escambia County Defendants, whereas they have sought no similar extraordinary relief against the Lake County Defendants. Further, the Lake County Defendants do not object to this request for transfer, obviating any concern about convenience to them. Thus, this factor weighs in favor of transfer.

## C. Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Although the Escambia County Defendants intend to seek a stay of any discovery due to dispositive issues fatal to Plaintiffs' claims,[3] to the extent any

---

[3] These issues will be more thoroughly briefed in the Escambia County Defendants' Response to Plaintiffs' Motion for Preliminary Injunction, and will also be raised in the Escambia County Defendants' forthcoming Dispositive Motion to Dismiss Plaintiffs' Amended Complaint.

discovery should occur, the relevant documents nearly all reside in the Northern District. Further, any depositions that may need to occur will be more convenient in the Northern District, given the residence of the Escambia County Defendants, the Florida State Defendants, any District staff that will need to be deposed, and B.G. By contrast, only the Lake County Defendants' documents are located in the Middle District. This factor also weighs in favor of transfer.

### D. Convenience of the Parties

The Escambia County Defendants have no presence in the Middle District and are located entirely in the Northern District. The Florida State Defendants in their official capacities reside in the Northern District and, more importantly, they consent to this transfer request because they agree it would be more convenient. B.G. resides in the Northern District. Plaintiffs Parnell and Richardson are domiciled in New York, making their presence neutral to the consideration of this factor. The Lake County Defendants consent to this transfer, meaning any inconvenience to them may be disregarded. As such, it would be entirely inconvenient to the parties to litigate this matter in the Middle District given their relative locations, viz, aside from the Lake County Defendants, none reside there.

### E. Locus of Operative Facts

"The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." *Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Cas. Ins.*

*Co.*, 223 F. Supp. 3d 1236, 1245 (M.D. Fla. 2016). As apparent from Plaintiffs'
Amended Complaint, the site of events from which their claims arise as to the
Escambia County Defendants—regarding the removal of the book at issue—and
the Florida State Defendants—regarding lawmaking by the Florida Legislature
and promulgation of rules by the Florida Department of Education implementing
the challenged laws—is the Northern District. [D.E. 61 at ¶¶ 39–54, 87–112]. As
Plaintiffs primarily challenge actions conducted by the Escambia County
Defendants in Escambia County, and the Florida State Defendants in Tallahassee,
this factor weighs heavily in favor of transfer to the Northern District. *Cf. Harvard
v. Inch*, 408 F. Supp. 3d 1255, 1259 (N.D. Fla. 2019) (denying transfer from Northern
District to Middle District in part because plaintiffs challenged "statewide policies
and practices . . . promulgated and enforced by Defendants in Tallahassee").

### F.  Availability of Process to Compel the Attendance of Unwilling Witnesses

"[A]vailability of process to compel attendance at trial should be examined"
when considering whether to transfer a matter. *Osgood*, 981 F. Supp. 2d at 1265.
Given the current venue for this case is the Jacksonville Division of the Middle
District, any unwilling witnesses related to Plaintiffs' claims regarding the
Escambia County Defendants or the Florida State Defendants would require a
subpoena's compliance, and require travel of more than 100 miles from Pensacola
or Tallahassee to Jacksonville. Thus, this factor also favors transferring.

10

## G. Relative Means of the Parties

The Escambia County Defendants are public officials, whose salary is generally set by statute. §§ 1001.395, 1001.50, Fla. Stat. Forcing them to litigate this matter in the Middle District will work an unnecessary hardship and require unnecessary expenditure of public funds when transfer to the Northern District, specifically the Pensacola Division, can alleviate this burden. So too would it be unnecessary to force B.G. to incur the costs related with litigating this matter in a foreign district versus her home venue, the Northern District. Plaintiffs Parnell and Richardson's means are unknown but, as New York residents, they will be forced to incur costs regardless of which venue in which this matter is litigated. At best, this factor is neutral, tipping towards favoring transfer given the Florida State Defendants and Lake County Defendants assent to the transfer request.

## H. Forum's Familiarity with the Governing Law

The claims Plaintiffs raise are based on novel theories of law regarding relatively new statutes. They concern the constitutionality of new legislation and whether the so-called "right to receive" information is actually cognizable under the First Amendment. There are other unsettled issues raised in Plaintiffs' Amended Complaint.[4] Although the Escambia County Defendants have every

---

[4] These will be more thoroughly briefed in the Escambia County Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction.

11

confidence this Court is either familiar with or will ably familiarize itself with the relevant law, there is current and related litigation in the Northern District that also concerns these issues and concerns the Escambia County Defendants and their actions. *See Pen Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, Case No. 3:23-cv-10385 (N.D. Fla.).[5] Plaintiffs in that case also challenge the actions of the Board in removing books from the District's library shelves, including the book at issue in this case. *See id.*, ECF No. 27 at ¶ 105 (listing *And Tango Makes Three* as among the "Removed Books" plaintiffs seek restored to the District's library shelves). The Board has already prepared a dispositive motion to dismiss the pleading in that case, *see id.*, ECF No. 28, and the court there has already taken a "preliminary peek" at the issues before it. *Id.*, ECF No. 35. Thus, given the Northern District court handling the related litigation has already begun its consideration of similar issues *sub judice*, this factor also weighs in favor of transfer.

## I. Weight Accorded to Plaintiffs' Choice of Forum

As noted *supra*, while Plaintiffs' choice of forum is generally entitled to a degree of deference, this deference is decreased when it is a foreign forum. Here,

---

[5] Although the *Pen American* litigation does not name Superintendent Leonard and only names the Board as a defendant, as argued below and will be argued in the Escambia County Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction, this is a distinction without a difference because suing Superintendent Leonard in his official capacity is the same as suing the Board and he is entitled to qualified immunity in his individual capacity.

Plaintiffs Parnell and Richardson are domiciled in New York, and therefore the Middle District is not their home forum. B.G.'s home forum is the Northern District. Their choice of the Middle District should be given little, if any, deference and this factor also favors transfer to the Northern District as it is *the only district in this state that is home to one of the Plaintiffs*. Further, as noted, "the most compelling reason for transfer of the instant case is that there are ongoing related proceedings pending" in another federal district court. *SOC-USA, LLC v. Off. Depot, Inc.*, No. 09–80545–CIV, 2009 WL 2365863, at *3 (S.D. Fla. July 30, 2009). This factor also favors transfer.

### J.  Trial Efficiency and the Interests of Justice, Based on the Totality of the Circumstances

The efficiency of any trial and the interests of justice weigh overwhelmingly in favor of transferring. At bottom, the majority of Plaintiffs' claims and requests for relief are directed at: (1) actions taken in Escambia County and (2) actions taken in Tallahassee. Further, the Lake County Defendants are due to be dismissed entirely from this matter because the actions taken in Lake County have already been mitigated by the Lake County Defendants' change in posture regarding *And Tango Makes Three*. [D.E. 33]. Given that Plaintiffs have essentially achieved their goal in respect to the Lake County Defendants, the only relief seemingly available to them as to these Defendants would be nominal damages. However, Plaintiffs cannot recover monetary damages from the Lake County Defendants for their

compliance, or attempted compliance, with Florida law. "[S]tate statutes, like federal ones, are entitled to the presumption of constitutionality until their invalidity is judicially declared." *Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 153 (1944); *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 254 (5th Cir. 1974). "Special circumstances" exist foreclosing the recovery of monetary damages where an agency followed state law that had not been previously declared unconstitutional. *See Pettway*, 494 F.2d at 254. Thus, even assuming the Lake County Defendants inappropriately applied H.B. 1557, and the application resulted in a constitutional deprivation, it would create an unjust result to impose monetary damages against them for applying a law they believed they were legally obligated to follow. *Id*.

In similar circumstances, the Northern District dismissed a plaintiff's monetary damages claims under Title VII against the Department of Education and individual Florida school boards for failure to state a claim upon which relief could be granted, where the plaintiff alleged compliance with state law resulted in unconstitutional disparate impact. *See Fla. Educ. Ass'n v. State of Fla., Dep't of Educ.*, Case No. 4:17-cv-414-RH/CAS, ECF No. 142 (N.D. Fla. June 8, 2018). Like in that case, the "special circumstances" exception here "fits like a glove," and Plaintiffs therefore do not state a claim for monetary damages—nominal or otherwise— against the Lake County Defendants for simply following a state statute that had yet to be declared unconstitutional. *Id*. at 8.

Further, Plaintiffs' claims against Superintendent Kornegay in her official capacity are duplicative, *C.P. ex rel. Perez v. Collier Cnty.*, 145 F. Supp. 3d 1085, 1090 (M.D. Fla. 2015) ("Section 1983 suits against officers in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent,' not against the officer individually." (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))), and in her individual capacity are barred by qualified immunity. *Cf. Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (finding because qualified immunity is "an immunity from suit rather than a mere defense to liability," it is particularly appropriate to raise in a motion to dismiss). Qualified immunity is appropriate unless the "supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice what the defendant official was doing would be clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002). There is no authority placing Superintendent Kornegay on notice that her alleged conduct, even if true, violated the Constitution; in fact, the only binding caselaw in this Circuit would indicate the opposite, i.e., that the Board is "the ultimate authority to decide what books will be purchased and kept on the shelves of the schools in the district." *Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1218 (11th Cir. 2009).  She is, therefore, immune from suit, and should be dismissed entirely.

15

And while it is unclear whether Plaintiffs' request for a declaratory judgment "that Defendants' actions violated Plaintiffs' rights under the Constitution and laws of the United States" is directed at the Lake County Defendants, [D.E. 61 at p.59], this is irrelevant. That is because as of the filing of the Amended Complaint, there are no active actions or deprivations by the Lake County Defendants that can be considered unconstitutional because the Lake County Defendants restored *And Tango Makes Three* to library shelves *before* the Amended Complaint was filed. *Cf. Reynolds v. Behrman Capital IV L.P.*, 988 F.3d 1314, 1319 (11th Cir. 2021) ("An amended complaint supersedes and replaces the original complaint."). This Court has observed Plaintiffs' claims for injunctive relief in this respect are moot, [D.E. 51], and Plaintiffs cannot seek declaratory relief for retrospective conduct; thus *all* claims towards the Lake County Defendants should be declared moot. *See Carver Middle Sch. Gay-Straight All. v. Sch. Bd. of Lake Cnty.*, 842 F.3d 1324, 1330 (11th Cir. 2016) ("Although a court may grant declaratory relief even though it chooses not to issue an injunction, a court cannot grant declaratory relief when there is no immediate and definite governmental action or policy that has adversely affected *and continues to affect a present interest*." (emphasis added) (cleaned up)); *see also C.F.C. v. Miami-Dade Cnty.*, 349 F. Supp. 3d 1236, 1254 (S.D. Fla. 2018) ("To the extent that Plaintiffs request a declaration from this Court related to past conduct alone, such declaratory relief is moot and

16

those requests are denied."). Plaintiffs have "no present interest, other than vindication, in a declaratory judgment" against the Lake County Defendants. *Carver*, 842 F.3d at 1330. Without the Lake County Defendants as parties to this matter, venue no longer becomes appropriate in the Middle District and the *only* venue in Florida that would be appropriate is the Northern District. 28 U.S.C. § 1391(b)(1)–(2).

Contrast this lack of appropriate venue in the Middle District with the active injunctive relief Plaintiffs seek against the Escambia County Defendants. The pending Motion for Preliminary Injunction is solely aimed at the Escambia County Defendants and, depending on the outcome, could disrupt the status quo of the parties. Accordingly, and based on the above factors, the totality of the circumstances favors transfer to the Northern District.

So too would any trial of this matter, for the reasons stated herein. Succinctly stated, the majority of the parties reside in the Northern District. The majority of the relevant activities took place in the Northern District. Upon information and belief, the majority of the witnesses and evidence are located there. All Defendants consent to a transfer to the Northern District. Any trial on this matter will be far more efficient if it takes place in a venue central to the majority of the parties and witnesses, viz, the Pensacola Division of the Northern District.

Further, and arguably most importantly, the interests of justice will be served by a transfer. As this Court has acknowledged, "[w]here two actions involving overlapping issues and parties are pending in two federal court[s], there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." [D.E. 33 at 3 (quoting *Manuel*, 430 F.3d at 1135)]. Here, the Northern District litigation regarding the Board's actions—including the removal of *And Tango Makes Three*—was initiated on May 17, 2023, *see Pen Am. Ctr.*, ECF No. 1, and an amended complaint was filed on July 21, 2023. *Id.*, ECF No. 27. By contrast, the Complaint in this matter was filed on June 20, 2023, [D.E. 1], and the Amended Complaint was not filed until August 25, 2023. [D.E. 61]. Thus, both iterations of the *Pen American* pleadings predate the pleadings in this matter.

Further, there is substantial overlap between the cases. For example, the *Pen American* plaintiffs, like Plaintiffs here, also seek to enjoin the Board's removal of *And Tango Makes Three* and request that the Board be ordered to put it back on the District's library shelves. *Compare Pen Am. Ctr.*, ECF No. 27 at ¶ 105 (listing *And Tango Makes Three* as a "Removed Book"), *and id.*, § VI.A. (Prayer for Relief requesting "Issue preliminary and permanent injunctive relief requiring the School Board and its agents, employees, and successors in office to restore to the libraries within the School District the Removed Books, consistent with the

recommendations of the District Review Committees."), *with* [D.E. 61 at 58–59 (Prayer for Relief requesting "a preliminary injunction requiring the Escambia County Defendants to restore *Tango* to Escambia County public school libraries from which it has been removed.")].

 In addition, the bases for the challenges in the two suits are similar. The *Pen American* plaintiffs challenge the Board's actions as viewpoint discrimination; Plaintiffs here challenge the Escambia County Defendants' actions as viewpoint and content-based discrimination. *Compare Pen Am. Ctr.*, ECF No. 27 Count I, *with* [D.E. 61 Count I]. The *Pen American* minor plaintiffs claim the Board violated their right to receive information; B.G. claims the Escambia County Defendants violated her right to receive information. *Compare Pen Am. Ctr.*, ECF No. 27 Count II, *with* [D.E. 61 Count II]. Given the substantial overlap in claims and issues, the Escambia County Defendants' defenses and arguments for dismissal will be similar as well. *See, e.g.*, *Pen Am. Ctr.*, ECF No. 28.

 "A first filed analysis looks to the character of the suits and the parties to the suits, not simply to the similarity of issues without regard to the identity of the parties asserting them and their asserted rights as presented in the initial lawsuit." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 79 (11th Cir. 2013). "[T]he party objecting to jurisdiction in the first-filed forum [is required to] carry the burden of proving 'compelling circumstances' to warrant an exception to the

first-filed rule." *Manuel*, 430 F.3d at 1135. The Escambia County Defendants respectfully contend Plaintiffs cannot provide "compelling circumstances" to bypass the first-filed rule: the *Pen American* litigation focuses on whether the Board's decision to remove certain books, including *And Tango Makes Three*, was constitutional; the instant litigation focuses on whether the Escambia County Defendants acted constitutionally when they removed *And Tango Makes Three* from the District's libraries. Although the plaintiffs may differ, their claims—and goals—align, and both cases will require a court to adjudicate the constitutionality of the Board's actions.

Thus, transferring this case would further the goals underlying section 1404(a), given the meaningful similarity in relief sought, the parties present, and the facts of each case. *See Tingley Sys., Inc. v. Bay State HMO Mgmt., Inc.*, 833 F. Supp. 882, 887 (M.D. Fla. 1993) (finding where the pending cases involve the same central issue, as they do here, transfer is particularly appropriate); *see also See Seal Shield, LLC v. Otter Prod., LLC*, No. 6:13-CV-967-ORL-37, 2013 WL 6017330, at *5 (M.D. Fla. Nov. 13, 2013) ("[J]udicial economy would likely be best served by transferring th[e] action . . . and avoiding the need for the parties and the courts to coordinate parallel litigation proceeding in fora nearly 2,500 miles apart."). As such, given the ongoing and first-filed litigation in the Northern District, the interests of justice are served by transferring. It is possible that the Northern

20

District will enter judgment in the Board's favor in that lawsuit prior to this Court ruling on Plaintiffs' Motion for Preliminary Injunction and/or Amended Complaint. In the event this Court finds in favor of Plaintiffs, the Board will be in the position where one federal court has found its actions constitutional while another has found them unconstitutional. *See Chicken Kitchen USA, LLC v. Tyson Foods, Inc.*, No. 17-21503-CIV-WILLIAMS, 2017 WL 6760811, *4 (S.D. Fla. Oct. 4, 2017) ("[R]efusing transfer here would needlessly duplicate judicial resources and result in simultaneous litigation on the same issues, contravening the policies underlying § 1404(a) and risking inconsistent judgments"). This is a disservice to the interests of justice, which seeks the promotion of uniform and consistent rulings. Transferring this matter to the Northern District—specifically the Pensacola Division where the *Pen American* litigation is being heard—will allow one court to adjudicate the common themes that predominate both these lawsuits and issue uniform rulings as to whether the Board's actions were constitutional.

### K. This Matter Should Be Transferred to the Pensacola Division of the Northern District

As noted, ongoing litigation involving the Board exists in the Pensacola Division of the Northern District. Should the Court agree that this matter be transferred, the Escambia County Defendants respectfully ask that, pursuant to Northern District of Florida Local Rule 3.1(A)(1), the Court transfer it to the Pensacola Division, both for the convenience of the parties and witnesses, and

given the substantial overlap in issues in both lawsuits. Upon transfer to the Northern District, the Escambia County Defendants will seek to have the case transferred to Judge T. Kent Wetherell II.

## III.   CONCLUSION

The Northern District is actively considering claims that directly impact any decision this Court may make regarding Plaintiffs' claims and the book Plaintiffs seek to force the Escambia County Defendants to return to the District's library shelves. Any decision this Court may make—including but not limited to Plaintiffs' Motion for Preliminary Injunction—potentially risks inconsistent or inefficient rulings amongst the federal courts. Moreover, the factors the Eleventh Circuit has laid out for consideration of transferring matters all either weigh in favor of transfer or are neutral. Plaintiffs' choice of the Middle District as venue should not be given deference given this venue is foreign to all of them, B.G. resides in the Northern District, and all Defendants but the Lake County Defendants—who consent to the transfer—reside in some fashion in the Northern District. Thus, the Escambia County Defendants respectfully request that the Court issue an order, pursuant to either 28 U.S.C. § 1404(a), transferring this action to the United States District Court for the Northern District of Florida, Pensacola Division, and any and all further relief this Court deems just and proper.

## LOCAL RULE 3.01(g)

Undersigned counsel certifies that they have conferred with counsel for Plaintiffs via video conference, and they do not consent to the relief requested herein. Undersigned counsel certifies that they have conferred with counsel for the Florida State Defendants via telephone and they do consent to the relief requested herein. Undersigned counsel certifies that they have conferred with counsel for the Lake County Defendants via telephone, and they do consent to the relief requested herein.

Respectfully submitted,

/s J. David Marsey
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street
Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783
Attorneys for Defendants Escambia County School Board and Keith Leonard

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Faith Elizabeth Gay at fgay@selendygay.com, Anna Theresa Neill at aneill@kmpa.com, Lauren J. Zimmerman at lzimmerman@selendygay.com, Masha Simonova at msimonova@selendygay.com, Nancy A. Fairbank at nfairbank@selenygay.com, Max H. Siegel at msiegel@selendygay.com, and William Jay Blechman at wblechman@kmpa.com (Counsel for Plaintiffs); Zachary Tyler Broome at zbroome@bowenschroth.com, James A. Myers at jmyers@bowenschroth.com (Counsel for Defendants School Board of Lake County and Kornegay); Daniel Bell at daniel.bell@myfloridalegal.com, Anita J. Patel at anita.patel@myfloridalegal.com, David Costello at david.costello@myfloridalegal.com, and Erik Sayler at eric.sayler@myfloridalegal.com (Counsel for Defendants Diaz, Gibson, Petty, Brown, Byrd, Christie, Garcia and Magar)**.

/s Nicole Sieb Smith
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street
Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783
Attorneys for Defendants Escambia County School
Board and Keith Leonard

25