## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

PETER PARNELL, et al.,

      Plaintiffs,

v.                                  Case No. 5:23-cv-381-BJD-PRL

SCHOOL BOARD OF LAKE
COUNTY, FLORIDA, et al.,

      Defendants.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Defendants Escambia County

School Board and Keith Leonard's (Collectively, the Escambia Defendants)

Time Sensitive Motion to Transfer Venue to the Northern District of Florida

(Doc. 71) and Plaintiffs' Response in Opposition (Doc. 77). Defendants argue

this case should be transferred to the United States District Court for the

Northern District of Florida, Pensacola Division under 28 U.S.C. § 1404(a).

### A. Background

On June 20, 2023, eight Plaintiffs sued ten Defendants, challenging the

constitutionality of Florida 2022 House Bill 1557 (H.B. 1557) and 2023 House

Bill 1069 (H.B. 1069). (*See* Doc. 1). Plaintiffs' lawsuit is related to the injuries

Plaintiffs purportedly suffered after a book, *And Tango Makes Three*

("*Tango*") was removed from school libraries in Lake County, Florida. (<u>See</u> <u>generally</u> Doc. 1).

Plaintiffs Parnell and Richardson (Collectively, the "Author Plaintiffs") sue under 42 U.S.C. § 1983, alleging H.B. 1557 and H.B. 1069 violated their first amendment rights through content and viewpoint discrimination (Count I); Plaintiffs E.D.B., Z.T., E.T., D.S., E.S., and M.H. (Collectively, the "Student Plaintiffs") sue under 42 U.S.C. § 1983, alleging H.B. 1557 and H.B. 1069 violated their first amendment rights through preventing the Student Plaintiffs from receiving information (Count II); all Plaintiffs sued under 42 U.S.C. § 1983 alleging H.B. 1557 and H.B. 1069 are unconstitutional in their vagueness and by being overbroad (Counts III and IV).

On June 21, 2023, Plaintiffs filed a motion for a preliminary injunction, requesting the Court to require Defendants Diane Kornegay and the School Board of Lake, County, Florida (Collectively, the "Lake County Defendants") "to temporarily restore students' ability to access [*Tango*] regardless of grade level in Lake County public school libraries . . . through the pendency of this action." (Doc. 6 at 6). The Court denied Plaintiffs' motion for preliminary injunction as moot. (<u>See generally</u> Doc. 51).

Defendants then moved the Court to dismiss Plaintiffs' Complaint. (<u>See</u> Docs. 53, 54). In response, Plaintiffs amended their complaint. (<u>See</u> Doc. 61); <u>see also</u> Fed. R. Civ. P. 15(a)(1)(B).

In the Amended Complaint, only Author Plaintiffs remain. All the Student Plaintiffs from the original complaint were removed, and a new student Plaintiff added: B.G. "B.G. was born and raised in Escambia County, Florida. She resides with her family in Pensacola, Florida." (Doc. 61 at ¶ 20). Two Defendants are added: the School Board of Escambia County, Florida and Keith Leonard, Superintendent of the Escambia County School District (Collectively, the "Escambia County Defendants"). The same four Counts are alleged in the Amended Complaint as in the original complaint. (Compare Doc. 1 with Doc. 61).[1]

On August 29, 2023, Plaintiffs filed a new motion for preliminary injunction, this time asking the Court to require the Escambia County Defendants "to restore students' ability to access [*Tango*] regardless of grade level, in Escambia County public school libraries immediately and through the pendency of this action." (Doc. 62 at 7).[2]

---

[1] The Court notes Plaintiffs' Complaint is a prototypical shotgun complaint. See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321–24 (11th Cir. 2015); Cramer v. Florida, 117 F.3d 1258, 1263 (11th Cir. 1997); Cook v. Randolph Cnty., 573 F.3d 1143, 1151 (11th Cir. 2009); Yeville v. Miami Dade Cty. Pub. Sch., 643 F. App'x 882, 884 (11th Cir. 2016). Counts I, III, and IV do not explain which Defendants are allegedly violating Plaintiffs' rights. As Plaintiffs challenge the constitutionality of H.B. 1557 and H.B. 1069, it is unclear whether all Defendants should defend all Counts.

[2] The Court notes both motions for preliminary injunction are nearly identical.

On September 6, 2023, newly served Escambia County Defendants moved to transfer this case from the Middle District of Florida to the Northern District of Florida. (See Doc. 71).

## B. Legal Standard

28 U.S.C. § 1404(a) "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). The statute "empowers a district court to transfer any civil action to another district court if the transfer is warranted by the convenience of parties and witnesses and promoted the interest of justice." Id. (quotation marks and internal footnote omitted).

To determinate whether the circumstances of a case warrant transfer, the court evaluates a number of factors, including:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Under § 1404(a), a trial court has broad discretion in determining whether a

transfer is appropriate. <u>Brown v. Connecticut Gen. Life Ins. Co.</u>, 934 F.2d 1193, 1197 (11th Cir. 1991). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." <u>Robinson v. Giarmarco & Bill, P.C.</u>, 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted).

### C. Discussion

To begin, the Court recognizes the deference that should be afforded to Plaintiffs' choice of forum. Plaintiffs filed their lawsuit in the United States District Court for the Middle District of Florida, Ocala Division. No district court judge sits in the Ocala Division. Accordingly, this case was randomly assigned throughout the Middle District, ultimately being assigned to the undersigned. The Court analyzes Escambia County Defendants' Motion and Plaintiffs' Opposition keeping this assignment in mind.

### a. Whether this action could have been brought in the Northern District of Florida

Under 28 U.S.C. § 1404(a), "the threshold consideration is whether the action 'might have been brought' in the proposed transferee district court." <u>Windmere Corp. v. Remington Prods., Inc.</u>, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (citing <u>Cont'l Grain Co. v. THE Barge FBL-585</u>, 364 U.S. 19 (1960)). Under federal law, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Escambia County Defendants propose this case might have been brought in the United States District Court for the Northern District of Florida, and specifically in the Pensacola Division. (Doc. 71 at 11). For the purposes of answering the threshold question, the Court considers the federal district, not the division, in determining the proper venue. See Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Texas, 571 U.S. 49, 55–59 (2013).[3]

Here, Plaintiffs do not dispute that this case could have been brought in the Northern District of Florida. (Doc. 77 at 6–7). Upon review, ten of the

---

[3] In Atl. Marine Const. Co., Inc., the Court explained where venue is proper under 28 U.S.C. § 1391. There, the Court explained, "The structure of the federal venue provisions confirms that they alone define whether venue exists in a given forum. In particular, the venue statutes reflect Congress' intent that venue should always lie in *some* federal court whenever federal courts have personal jurisdiction over the defendant." 571 U.S. at 56 (emphasis in original). Under the federal venue statute for Florida, Congress established three judicial districts. 28 U.S.C. § 89. While the statute provides where the courthouses shall be located throughout the federal districts, the statute does not specify which courthouses shall cover each county. Divisions are a creature of Local Rules, not federal law. See Rule 3.1(A), Local Rules for the United States District Court for the Northern District of Florida.

now twelve Defendants have ties to the Northern District of Florida, specifically to Leon and Escambia Counties.[4] Two of the twelve Defendants, the Lake County Defendants, have ties to the Middle District of Florida, specifically to Lake County. Under 28 U.S.C. § 1391(b)(1) this lawsuit could have been brought in either the Northern or the Middle Districts of Florida. See 28 U.S.C. §§ 89(a)–(b).

Likewise, under 28 U.S.C. § 1391(b)(2), the events giving rise to the claims of this lawsuit occurred in both the Northern and Middle Districts of Florida. (See generally Doc. 61). Plaintiffs allege that both Lake County and Escambia County Defendants removed *Tango* from school libraries. Id. at ¶¶ 14–15. The facts alleged lead the Court to conclude Plaintiffs could have brought suit in either the Northern or Middle Districts of Florida. See 28 U.S.C. § 1391(b)(2); 28 U.S.C. §§ 89(a)–(b). The Court does not have to consider subsection (3) because venue can be established under either the

---

[4] Plaintiffs' Amended Complaint names as Defendants the following individuals in their official and individual capacities: Manny Díaz, Jr., Florida's Commissioner of Education; Ben Gibson, Chair of the Florida State Board of Education; Ryan Petty, Vice Chair of the State Board of Education; Monesia Brown, Esther Byrd, Grazie P. Christie, Kelly Garcia, and MaryLynn Magar, members of the State Board of Education. (Doc. 61 at ¶¶ 30–33). While Plaintiffs do not provide any allegations about where these Defendants are domiciled for the purposes of determining venue, the Florida Department of Education is based in Tallahassee. *Contact Us*, FLORIDA DEPARTMENT OF EDUCATION, https://www.fldoe.org/contact-us/. The Court takes judicial notice that the Florida Department is located in Tallahassee. "Judicial notice is a means by which adjudicative facts not seriously open to dispute are established as true without the normal requirement of proof by evidence." Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC, 369 F.3d 1197, 1204 (11th Cir. 2004) (citing Fed. R. Evid. 201 (a)–(b).

Defendants' domicile or the substantial part of the events in the case. As the

Northern District is a proper venue, the Court now analyzes the nine factors

to determine whether transfer is proper.

### b. Convenience of the witnesses

"The convenience of both the party and non-party witnesses is probably

considered the single most important factor in the analysis whether a

transfer should be granted." Osgood v. Discount Auto Parts, LLC, 981 F.

Supp. 2d 1259, 1264 (S.D. Fla. 2013) (quoting Hernandez v. Graebel Van

Lines, 761 F. Supp. 983, 987 (E.D. N.Y. 1991)). Plaintiffs argue that the

Court should focus on non-party witness convenience in considering this

factor. (See Doc. 77 at 7–11) (citing Trinity Christian Ctr. of Santa Ana, Inc.

v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010)).

However, precedent directs no such parsing of witnesses, be they employees

of parties or not. See Norwood v. Kirkpatrick, 349 U.S. 29, 31–32 (1955)

(explaining Congress intended the convenience to include both the parties

and witnesses); Manley v. Engram, 755 F.2d 1463, 1467 n.10 (11th Cir. 1985)

(explaining the same).

Here, ten of the twelve Defendants are located in the Northern District

of Florida. While similar allegations are levied against both the Escambia

County and Lake County Defendants, Plaintiffs allege that Lake County

Defendants followed "Florida Department of Education guidance" in following

the acts giving rise to Plaintiffs' lawsuit. (Doc. 61 ¶ 72). The Lake County allegations are inextricably intertwined with events occurring in the Northern District, and witnesses that can attest to those events are likely located in the Northern District. (See Doc. 71 at 7). The Court previously raised concerns about such connection between witnesses and occurrences in the Northern District during the initial motion for preliminary injunction. (See Doc. 49 at 28–34). Accordingly, the Court weighs the convenience of the witnesses in favor of Defendants.

### c. The location of relevant documents and the relative ease of access to sources of proof

"This factor examines the location of sources of documentary proof and other tangible materials, and the ease with which the parties can transport them to trial." Trinity Christian Ctr., 761 F. Supp. 2d at 1327. "[T]he significance of this factor is reduced because technological advancements in electronic document imaging and retrieval minimize the burden of document production." Id. The Court agrees that this factor is made neutral by modern advancements in technology.

### d. The convenience of the parties

Having discussed the convenience of the witnesses and the location of relevant documents, the convenience of the parties concerns the appearance

of the named parties and, to some extent, the appearance of counsel. <u>Trinity Christian Ctr.</u>, 761 F. Supp. 2d at 1328.

There are three Plaintiffs, two of which are the Author Plaintiffs, who do not reside in Florida. (Doc. 61 at ¶¶17–19). The third, B.G., resides in Escambia County. <u>Id.</u> at ¶20.

There are twelve Defendants. Eight Defendants are tied to Leon County. <u>Id.</u> at ¶¶30–33. Two Defendants are tied to Escambia County. <u>Id.</u> at ¶¶26–27. Two Defendants are tied to Lake County. <u>Id.</u> at ¶¶28–29.

Ultimately, of the fifteen parties, three are tied to Escambia County, eight are tied to Leon County, two are tied to Lake County, and two are non-Florida residents. Eleven of the parties are tied to the Northern District and two are tied to the Middle District of Florida. The convenience of the parties weighs in favor of Defendants' motion to transfer.

### e. The locus of operative facts

"In determining the locus of operative facts, the court must look at 'the site of events from which the claim arises.'" <u>Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.</u>, 223 F. Supp. 3d 1236, 1245 (M.D. Fla. 2016) (Howard, J.) (quoting <u>Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C.</u>, 294 F. Supp. 2d 218, 220 (D. Conn. 2003)).

Defendants direct the Court to Plaintiffs' Amended Complaint where Plaintiffs implicate Florida lawmaking in the actions carried out by the

Department of Education and the Lake County and Escambia County Defendants. (<u>See</u> Doc. 61 at ¶¶39–54). Indeed, the Court raised similar concerns about this implication at the first preliminary injunction motion. (<u>See</u> Doc. 49 at 28–34). As Plaintiffs challenge the constitutionality of Florida laws, the question begins in Tallahassee: both in the law's passage and in the law's application. The secondary location of facts are the actual actions taken by the Lake County and Escambia County Defendants.

If the Court were to view the book removals in isolation, this factor would weigh neutrally as both Lake County and Escambia County Defendants are alleged to have violated Plaintiffs' First Amendment rights; however, as Plaintiffs have alleged, and as the Court has questioned, the State Defendants and their actions or omissions are equally as important in evaluating Plaintiffs' claims. Accordingly, this factor weighs in favor of Defendant.

### f. The availability of process to compel the attendance of unwilling witnesses

Just as technology has made the location of relevant documents neutral, so has such technology made the availability to compel unwilling witnesses neutral. <u>See</u> <u>Blue Cross & Blue Shield of Fla., Inc. v. Davita, Inc.</u>, 2022 WL 18492515 (M.D. Fla. May 27, 2022) (Davis, J.) (granting a plaintiff's motion to require the remote testimony at trial of two witnesses).

### g. The relative means of the parties

Defendants acknowledge that, at best, this factor is neutral. (Doc. 71 at 11). The Court will not speculate as to the means of the parties as Defendants have presented argument best categorized as theory.

### h. A forum's familiarity with the governing law

Ultimately, this factor is neutral. Either a court in the Northern or Middle District of Florida is capable of evaluating and adjudicating Plaintiffs' claims.

### i. Trial efficiency and the interests of justice, based on the totality of the circumstances

The Court is faced with whether to require parties to travel to Jacksonville, or, as Defendants frame it, to Pensacola. But, there is a third option: Tallahassee. Eight of the fifteen litigants are located in Tallahassee. A significant portion of the events giving rise to Plaintiffs' Amended Complaint are tied to Tallahassee. The most efficient venue would be Tallahassee.

### j. The weight accorded a plaintiff's choice of forum

Plaintiffs originally brought this lawsuit in the United States District Court for the Middle District of Florida, Ocala Division. Because the Court does not have an assigned district judge sitting in the Ocala courthouse, the case was randomly assigned to the undersigned, in the Jacksonville Division. To give weight to Plaintiffs' choice of forum fully would be to respect their choice in litigating in Ocala: however, that is not a viable option.

Of the eight factors to weigh against Plaintiffs' choice of forum, four weigh in Defendants' favor, and four are neutral. So, the Court must consider Plaintiffs' choice against this even balance.

The convenience of the witnesses, the convenience of the parties, the locus of operative facts, and the efficiency of trial are all better served in the Northern District of Florida, and specifically in Tallahassee. More witnesses and events occurred in and around Tallahassee, even if the eventual harmful actions—the book removals—occurred in Lake and Escambia Counties. Certainly here, if Plaintiffs had not added the Escambia County Defendants, this analysis would be different. But those are not the circumstances before the Court. This case must be transferred.

### k. Defendant's request to transfer to the Pensacola Division

Finally, Defendants argue broadly that this case must be transferred to the Pensacola Division under the "first filed" rule. (See Doc. 71 at 18–21). Not so. Defendants raised their transfer motion under 28 U.S.C. § 1404(a), which contemplates transferring a case between districts. See Atl. Marine Const. Co., Inc., 571 U.S. at 55–59. Whether this case should further be transferred within the Northern District under a better suited Local Rule is a judgment best determined by that court.

Accordingly, it is

**ORDERED:**

1. Escambia Defendants' Time Sensitive Motion to Transfer Venue to the Northern District of Florida (Doc. 71) is **GRANTED in part**.

2. The Clerk of Court shall **TRANSFER** this case to the United States District Court for the Northern District of Florida, Tallahassee Division.

3. The Hearing on Plaintiffs' Motion for Preliminary Injunction is **CANCELLED** so that the Northern District of Florida, Tallahassee Division may schedule the appropriate deadlines. Defendants shall still submit their response brief by September 15, 2023.

**DONE** and **ORDERED** in Jacksonville, Florida this 15th day of September, 2023.

_____
BRIAN J. DAVIS
United States District Judge

8
Copies furnished to:

Counsel of Record

- 14 -