UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PETER PARNELL, et al.,

       Plaintiffs,

vs.                      CASE NO.:  5:23-cv-00381-BJD-PRL

SCHOOL BOARD OF LAKE COUNTY,
FLORIDA, et al.

       Defendants.

_____/

## ESCAMBIA COUNTY SCHOOL BOARD'S AND KEITH LEONARD'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants, Escambia County School Board ("Board") and Keith Leonard, in his official and individual capacities ("Escambia County Defendants"), respond to Plaintiffs' Motion for Preliminary Injunction, [D.E. 62 ("Motion")], as follows:

### I.     INTRODUCTION AND BACKGROUND

Plaintiffs, Peter Parnell and Justin Richardson ("Author Plaintiffs") and minor Plaintiff B.G., filed a First Amended Complaint on August 25, 2023, naming the Escambia County Defendants for the first time. *See* [D.E. 61 ("Complaint")]. On August 29, 2023, Plaintiffs filed the instant Motion seeking a preliminary injunction requiring the Escambia County Defendants return the book *And Tango Makes Three* ("*Tango*") to the Escambia County School District's ("District") libraries. *See generally* Motion. Plaintiffs claim the decision to remove *Tango* is a

First Amendment violation of the "highest magnitude." *Id.* at 2. Plaintiffs' claim rests on a "faulty foundation." *Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1218 (11th Cir. 2009) ("*ACLU*"). Simply put, the Board decided to "remove[] from its own school libraries a book that the Board had purchased for those libraries with Board funds. It [has] not prohibit[ed] anyone else from owning, possessing, or reading the book." *Id.* Plaintiffs are thus unlikely to succeed on the merits. They also fail to show irreparable harm because they have unduly delayed in bringing this challenge, the Author Plaintiffs remain free to sell, publish, and distribute *Tango*, and B.G. remains free to access *Tango*.

Further, ordering Plaintiffs' requested relief threatens greater injury to the Escambia County Defendants than whatever threatened injury Plaintiffs claim. Plaintiffs can freely sell, distribute, promote, and otherwise access *Tango*; on the other hand, ordering the Board to return this book to its library shelves threatens the sovereignty of the Board as "the ultimate authority to decide what books will be purchased and kept on the shelves of the schools in the district." *Id.* Finally, the public's interest is served when its elected officials—such as the Board—can carry out their duty to monitor the content of all books made available in school libraries. *See* § 1006.28(1)(a)2., Fla. Stat. Plaintiffs' Motion should be denied.

The Escambia County Defendants request an evidentiary hearing on Plaintiffs' Motion, given the existence of bitterly disputed facts. *See McDonald's*

*Corp. v. Robertson*, 147 F.3d 1301, 1311 (11th Cir. 1998). Alternatively, even if the Court finds the facts are not bitterly disputed, there is still "much dispute as to the inferences to be drawn from the raw facts" of this case. *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1178 (11th Cir. 2002) (cleaned up). The Court should exercise its sound discretion and order an evidentiary hearing. *See id.*

## II.     MEMORANDUM OF LAW

### A. Legal Standard

A preliminary injunction is "an extraordinary and drastic remedy" requiring the movant to "clearly establish the burden of persuasion." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (cleaned up). The moving party must show "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Id.* "[A] preliminary injunction is the exception rather than the rule." *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975).[1]

---

[1] Decisions of the Fifth Circuit Court of Appeals decided prior to September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

### B. Plaintiffs Are Not Substantially Likely to Succeed on the Merits

Plaintiffs are unlikely to succeed on the merits, and therefore are not entitled to an injunction. Plaintiffs' claims are unlikely to succeed for several reasons: (1) the Complaint is a shotgun pleading; (2) the claims against Superintendent Leonard fail; (3) Plaintiffs lack standing; (4) Plaintiffs' factual predicate is wrong; (5) the Board's actions constitute government speech; and (6) Plaintiffs' efforts to have section 1001.42(8)(c)(3) enjoined and declared unconstitutional fail for the same reasons multiple other federal courts have found such challenges lacking.

### i. The Complaint Is an Impermissible Shotgun Pleading

The Complaint is a shotgun pleading, "mak[ing] it virtually impossible . . . to determine the likelihood of success on the merits of any of the claims." *Cousins v. Sch. Bd. of Orange Cnty.*, 636 F. Supp. 3d 1360, 1373 (M.D. Fla. 2022). "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d. 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has recognized four rough kinds of such pleadings: (1) a complaint containing multiple counts adopting the allegations of all preceding counts; (2) a complaint filled with conclusory, vague, and immaterial facts not connected to any particular cause of action; (3) a complaint that does not separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple

defendants without specifying which defendants are responsible for which acts or omissions. *Id.* at 1321–23. The Complaint violates each prohibition.

Count I expressly incorporates 84 of the preceding 112 paragraphs, and consists of distinct claims for both content and viewpoint discrimination, with no specification as to which Defendants it is brought against. [D.E. 61 at Count I]. Count II expressly incorporates 83 preceding paragraphs and asserts multiple distinct claims against the Florida State Defendants and the Escambia County Defendants. *Id.* at Count II. Count III incorporates 112 preceding paragraphs, is brought in the alternative by all Plaintiffs — thus creating multiple distinct claims — and again does not specify which Defendants it is asserted against; so too does Count IV. *Id.* at Counts III, IV. Moreover, Counts III and IV are unclear as to whether they are facial or as-applied constitutional challenges. *See id.*

Because each of the four counts are based on a different conglomeration of Plaintiffs and/or Defendants, many of the incorporated allegations are irrelevant and immaterial to the claims. And given the failure to separate out which Plaintiff is bringing which count against which Defendant, the Complaint "improperly lumps multiple causes of action into a single count." *Cousins*, 636 F. Supp. 3d at 1373. This makes it "exceedingly difficult, if not impossible to know which allegations pertain to that count (according to its label), [and] to separate the wheat from the chaff." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014). It is

against this convoluted framework the Escambia County Defendants are forced to respond and the Court has to evaluate Plaintiffs' chances of success on the merits.

Further, like another failed challenge to section 1001.42(8)(c), the Complaint:

> [I]s over fifty pages long and contains lengthy and unnecessary argument as to the reasons for the enactment of section 1001.42(8)(c), a recitation of proposed but unadopted amendments to the bill prior to its passage that does not appear to have any logical connection to Plaintiffs' claims other than to attempt to besmirch the legislators involved in its passage, who are not defendants in this litigation, . . . and citation and discussion of provisions of the new law that are not relevant to the challenges actually raised in the counts.

*Cousins*, 636 F. Supp. 3d at 1272.[2] Finally, the Complaint contains an omnibus Prayer for Relief. [D.E. 61 at pp.58–60]. The Court should deny Plaintiffs' Motion solely based on these pleading failures alone. *See Cousins*, 636 F. Supp. 3d at 1373. Beyond this, however, additional deficiencies also warrant denial.

### ii. Plaintiffs' Claims Against Superintendent Leonard in His Individual Capacity Are Frivolous on Their Face

Plaintiffs' claims as to the Escambia County Defendants focus on events that took place "in or before February 2023," when the Board voted to remove *Tango* from library shelves. Motion at 1. Superintendent Leonard was not named Superintendent of the Escambia County School District until May 2023, with his contract being finalized and approved in June 2023. *See* Exs. A & B.

---

[2] Like the Complaint, Plaintiffs' Motion "is guilty of [the same] venial sin" by reiterating many of the same "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* (citing *Weiland*, 792 F.3d at 1322); *see, e.g.*, Motion at 3–6.

Plaintiffs cannot hold Superintendent Leonard responsible in his individual capacity for actions that occurred *before* he assumed his office. Plaintiffs' attempts to do so are frivolous on their face and show their inability to prevail on the individual capacity claims.[3] Moreover, the existence of such a factual dispute implicating whether Superintendent Leonard can even be individually liable for actions that occurred prior to him assuming his role as Superintendent are the sort of bitterly disputed facts requiring an evidentiary hearing.

Reinforcing the frivolity of any claims against Superintendent Leonard in his individual capacity is that he is not a member of the Board, and therefore does not possess the authority to order books removed. That authority rests solely within the Board. *See* § 1006.28(2)(a)1., Fla. Stat. ("Each district school board is responsible for the content of all . . . materials . . . made available in a . . . classroom library . . . ."). Plaintiffs' merging of Superintendent Leonard with the Board overlooks the crucial differences between these two constitutional offices. *Compare* Art. IX, § 4, Fla. Const. ("School Districts; School Boards"), *with* Art. IX, § 5, Fla. Const. ("Superintendent of Schools"). Plaintiffs' own exhibits reflect this, as they

---

[3] Additionally, in Florida the School Board, not the Superintendent, is the government entity with the power to sue and be sued. §§ 1001.41(4); 1012.22(1), Fla. Stat. Accordingly, the Escambia County School Board, and not the Superintendent in his official capacity—i.e., the Office of the Superintendent—is the proper legal party. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (finding claims against an official are claims against the entity they represent). To the extent Plaintiffs argue the Superintendent is an agent of the Board, the official capacity claims against him are unnecessarily duplicative. *Id.*

show the vote to remove *Tango* was taken—as it must under Florida law—by the Board. *See* [D.E. 62-6 at 7]. Plaintiffs cannot demonstrate a likelihood of success against Superintendent Leonard in his individual or official capacities because he never should have been included as a party defendant.

### iii. Superintendent Leonard Is Entitled to Qualified Immunity

Assuming without conceding a constitutional deprivation, Superintendent Leonard would still be entitled to qualified immunity in his individual capacity because there was no violation of a clearly established right. *Cf. Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (finding qualified immunity is particularly appropriate for a motion to dismiss). No authority places Superintendent Leonard on notice his alleged conduct, even if true, violated the Constitution; in fact, this Circuit's binding caselaw reflects the opposite: the Board is "the ultimate authority to decide what books will be purchased and kept on the shelves of the schools in the district." *ACLU*, 557 F.3d at 1218.

Qualified immunity is appropriate unless the "supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice what the defendant official was doing would be clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002). It protects all but "obviously wrong" actions that "in the light of pre-existing law . . . only a plainly incompetent

[employee] or one who was knowingly violating the law would have done such a thing"; otherwise, "the government actor has immunity from suit." *Id.* Qualified immunity applies whether or not the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Immunity is the rule, not the exception. *Rowe v. Schreiber*, 139 F.3d 1381, 1385 (11th Cir. 1998).

Government officials acting in their discretionary authority when the alleged wrong occurred are entitled to qualified immunity. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). To the extent Superintendent Leonard is charged with committing any wrongful act, he was acting within his discretionary authority because he was performing "a legitimate job-related function." *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Once a defendant's discretionary authority is established, the burden *shifts to Plaintiffs* to show that they: (1) have alleged a violation of a constitutional right; and (2) that the right was clearly established. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Plaintiffs have not alleged violations of cognizable constitutional rights under these facts, and clearly cannot show any asserted right was clearly established. Finally, Superintendent Leonard's alleged actions are not so egregious that the unlawfulness of the conduct was readily apparent, to show that a constitutional

right was clearly violated. *See Loftus v. Clark-Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012).

### iv. Plaintiffs Lack Standing

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold [sic] requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To satisfy the threshold standing requirement, "the plaintiff must have a personal stake in the case." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (cleaned up). And "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 2208. Plaintiffs fail this threshold inquiry, which means their claims are unlikely to succeed.

First, the Court should find that, as argued in the Lake County Defendants' Motion to Dismiss, [D.E. 53 at 12–21], the Author Plaintiffs lack standing to sue the Lake County Defendants. B.G. clearly also lacks standing to sue the Lake County Defendants as her claims are expressly limited to the actions of the Escambia County Defendants, [D.E. 61 at ¶¶ 94, 111]; she therefore has alleged no injury that can reasonably be traced back to the Lake County Defendants. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). Accordingly, the Court should dismiss these Defendants entirely for lack of subject matter jurisdiction. *Gause v.*

*Med. Bus. Consultants, Inc.*, 424 F. Supp. 3d 1175, 1189 (M.D. Fla. 2019) ("Where any element [of standing] is missing, the plaintiff lacks standing to sue, and the district court, as a result, lacks subject matter jurisdiction over the plaintiff's claims."). Given the lack of any other Defendants in the Middle District of Florida, the Court should conclude this action was improperly brought there, 28 U.S.C. § 1391(b)(1)–(2), and order it either dismissed or transferred to the Northern District of Florida under either 28 U.S.C. § 1404(a) or § 1406(a). *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). The Court has an ongoing obligation to determine whether subject matter jurisdiction is present. *Fla. Wildlife Fed'n, Inc. v. S. Fla. Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011). It is not with respect to the Lake County Defendants, making this an improper venue, meaning any injunction issued would be an abuse of discretion. *See Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1247 (11th Cir. 2023).

### a. The Author Plaintiffs Lack Standing

The Author Plaintiffs claim to have standing because *Tango* has been removed from the District's libraries. This cannot satisfy Article III's requirements.

The doctrine of standing requires "that a case embody a genuine, live dispute between adverse parties" by insisting that a litigant "prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision."

*Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). A plaintiff must show more than "an abstract and generalized harm" to his interest in the proper application of the law, or it does not count as an injury in fact, and fails to establish standing. *Id.*

Here, the removal of books from shelves does not create a constitutional injury. *E.g.*, *ACLU*, 557 F.3d at 1218 ("The School Board could have decided not to purchase and shelve [*Tango*] in the first place. . . . Unless deciding not to purchase a book is an act of banning it, and no rational person would suggest it is, removing a book from one's own shelves is not book banning either."). Standing requires "that a party seeking review must allege facts showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). Books, like trees, do not have standing. *See id.* at 741 (Douglas, J., dissenting). And Plaintiffs have not identified, nor have the undersigned found, any constitutional right to have one's book on the shelves of a public school library, or any corollary right preventing its removal. "[R]emov[ing] from its own school libraries a book that the Board had purchased for those libraries with Board funds" does "not prohibit anyone else from owning, possessing, or reading the book." *ACLU*, 557 F.3d at 1218. The Author Plaintiffs have no constitutional injury in the removal of their book.

Plaintiffs argue the Escambia County Defendants relied on and "deployed H.B. 1557 to censor *Tango* on the basis of its viewpoint and content." Motion at 17,

21. Plaintiffs are incorrect. The Board did not rely on H.B. 1557 in making its determination: in the appeal record given to the Board before it decided to remove *Tango*, the District Materials Review Committee noted H.B. 1557 *did not apply* and provided clarification of the State's position in other litigation regarding the applicability of H.B. 1557. [D.E. 62-7 at 12, 22–25]. This was also explained to the Board during the meeting. *ECSD Special Meeting 02-20-2023*, YouTube, https://www.youtube.com/watch?v=7khKXKqvf0Q&list=PLkuTAI1Za_y4DW ZFLI57Kuze0qetQ0031&index=30 (beginning at 1:52:38 mark). Plaintiffs cannot recast the record in a more favorable light in pursuit of a preliminary injunction.

Plaintiffs offer no facts showing the Board ignored this information. Plaintiffs' efforts at imputing the alleged animus of the complainant onto the Board fails, as she does not speak for or bind the Board in any way. And contrary to Plaintiffs' claims, the Board relied on its codified policy for reviewing objections to library materials—one required by Florida law, § 1006.28(2)(a)2., Fla. Stat.—and upon consideration the Board determined *Tango* was not fit for District libraries.

Moreover, the Board has not inhibited or prohibited the Author Plaintiffs' ability to write, market, and sell their books, *even to the Board's students. See ACLU*, 557 F.3d at 1219. That "[t]he Authors have a sincere and strongly held desire to ensure that Tango is available to children," Motion at 9, does not give them standing to demand their book remain on the District's library shelves, and it

strains credulity to argue any time the Board decides to remove a book it purchased for its libraries with Board funds it engages in viewpoint or content-based discrimination. As they cannot establish standing, their claims fail.

### b. B.G. Lacks Standing

B.G. also lacks standing. While she claims she "endeavored to check out *Tango*," and "desire[s] to read *Tango*," [D.E. 62-3 at ¶¶ 11–12], this does not satisfy Article III's requirements. While desire is a cognizable interest for purpose of standing, "the 'injury in fact' test requires more. It requires that the party seeking review be himself among the injured." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–63 (1992) (quoting *Sierra Club*, 405 U.S. at 734–35). In *Lujan*, the Court noted:

> The affiants' profession of an "intent" to return to the places they had visited before—where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species—is simply not enough. Such "some day" intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the "actual or imminent" injury.

504 U.S. at 564 (cleaned up). B.G.'s "some day" intentions to seek access to *Tango* "if [it] is restored to the . . . library," [D.E. 62-3 at ¶ 12], do not support any finding of actual or imminent injury required to demonstrate standing.[4] *Lujan*, 504 U.S. at 564. Without more, she fails this threshold inquiry, meaning she cannot succeed on the merits. Moreover, B.G. *has access* to Tango, as shown from the book's

---

[4] B.G.'s insistence that she be allowed to access this book in the District's libraries does not create a constitutional injury. The presupposition that the Escambia County Defendants are constitutionally obligated to provide what books its students "desire" fails scrutiny.

attachment to the Complaint and Motion for Preliminary Injunction. Taken together, B.G.'s claim is thus significantly diluted, if not eliminated entirely.

### v. The Factual Predicate of Plaintiffs' Complaint Is Wrong

Plaintiffs are also unlikely to succeed on the merits because the factual predicate on which they build their claim is flawed. Specifically, the public record does not support the allegations regarding the Board's action; and H.B. 1557 is not the law on which the Board's action was premised.

First, the recorded video of the Board's meeting at which *Tango* was removed shows the Board did not engage in impermissible viewpoint discrimination or act with an impermissible animus. *See ECSD Special Meeting 02-20-2023* (beginning at 1:48:53 mark). Plaintiffs offer nothing beyond conjecture for the Board's motive based upon a single Board member's comment. But a single comment by one Board member, Motion at 8, does not speak for the Board's motivation as a whole. As the Eleventh Circuit has explained, "the alleged . . . discriminatory motive of only one member of a three-member majority of a five-member council" does not give rise to municipal liability, instead all members in the majority must "share[] the illegal motive." *Mason v. Vill. of El Portal*, 240 F.3d 1337, 1339–40 (11th Cir. 2001). The same is true for school boards. *Fla. Fam. Ass'n, Inc. v. Sch. Bd. of Hillsborough Cnty.*, 494 F. Supp. 2d 1311, 1323 (M.D. Fla. 2007) ("An individual School Board member does not have authority to act alone, since

Florida law provides that [t]he district school board, *acting as a board*, shall exercise all powers and perform' various duties in the establishment and the operation of the schools." (emphasis added) (quoting § 1001.42, Fla. Stat.)); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994) (statements and actions by single council member did not establish a city's liability).

A review of the public record shows the Board removed *Tango* because it was "not suited to student needs and their ability to comprehend the material presented." § 1006.28(2)(a)2.b., Fla. Stat. (2022). Such an act is permissible, as the Supreme Court has instructed that "school official[s] [may] discriminate based on *content*." *Searcey v. Harris*, 888 F.2d 1314, 1324–25 (11th Cir. 1989) (citing *Hazelwood Sch. Dist. v Kuhlmeier*, 484 U.S. 260 (1988)). Under *Hazelwood*'s standard, content-based restrictions "reasonably related to legitimate pedagogical concerns" do not implicate the First Amendment. 484 U.S. at 273. Rather, only decisions with "no valid educational purpose" require "judicial intervention." *Id.* The record reflects the Board's decision undeniably included pedagogical concerns about the ability of students to comprehend the material in *Tango. See ECSD Spec. Mtg. 02-20-2023*.

Because Plaintiffs carry the heavy burden of demonstrating the requirement for an injunction, the Court should reject Plaintiffs' strained inference that unreasonably concludes the Board's action constitutes impermissible viewpoint discrimination. If nothing else, the varying inferences that could be drawn,

*Cumulus Media*, 304 F.3d at 1178, coupled with the need to determine "accuracy and fairness," favors an evidentiary hearing. *McDonald's Corp.*, 147 F.3d at 1313.

Second, as noted *supra*, Plaintiffs argue the Escambia County Defendants impermissibly "deployed H.B. 1557" and in doing so relied on section 1001.42(8)(c)(3) to remove *Tango. See* Motion at 17, 21. This is incorrect. The Board relied on section 1006.28(2), Florida Statutes, the legal framework for considering challenges to library materials. *See* [D.E. 62-6 at 7]. That framework requires the Board to "adopt a policy regarding an objection by a parent or a resident of the county to the use of a specific material." § 1006.28(2)(a)2., Fla. Stat. And that statute provides as grounds for removal, among others, "[a]ny material . . . made available in a school library . . . not suited to student needs and their ability to comprehend the material presented, or is inappropriate for the grade level and age group for which the material is used." *Id.*, § 1006.28(2)(a)2.b. (2022).[5] That the individual who filed the objection—who, to be clear, while employed by the Board, is not a member of, nor does she speak for or in any way bind the Board—may have misinterpreted the applicability of H.B. 1557 is irrelevant.

Simply put, the Board has the "ultimate authority" to determine which books to retain on its library shelves, and exercised its discretion in determining

---

[5] The current version of section 1006.28 states the same. *See id.*, § 1006.28(2)(a)2.b.(III)–(IV) (2023). And the Board's Policy on this topic at the time mirrored the statutory prohibitions. *See* Ex. C, Escambia Cnty. Sch. Bd. Pol'y 4.06 at 10.B.3.i.ii. (effective December 19, 2022 to June 20, 2023).

to remove *Tango*. *ACLU*, 557 F.3d at 1218. Plaintiffs' efforts to bootstrap a challenge to the constitutionality of H.B. 1557 by improperly imputing animus onto the Board is a "faulty foundation" upon which their Complaint is built, and for that reason their claims are unlikely to succeed. *Id.*

### vi. The Escambia County Defendants' Actions Constitute Government Speech

Plaintiffs are also unlikely to succeed on the merits because the Board's decision of what materials to include in its libraries constitute government speech, for which Plaintiffs enjoy no First Amendment protection. In public schools, "expression delivered directly through the government or indirectly through private intermediaries" is government speech. *Bannon v. Sch. Dist. of Palm Beach Cnty.*, 387 F.3d 1208, 1213 (11th Cir. 2004). Likewise, "in the case of a public library there is still government speech. The government speaks through its selection of which books to put on the shelves and which books to exclude." *ACLU*, 557 F.3d at 1202 (11th Cir. 2009) (cleaned up) (quoting *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005)).[6] The Board had "legitimate pedagogical reasons" for removing *Tango*, and thus its government speech comports with the First Amendment. *See ACLU*, 557 F.3d at 1202. Plaintiffs' claims

---

[6] Selecting and removing materials in a school library complies with the First Amendment, as the Free Speech Clause "does not regulate government speech." *Mech v. Sch. Bd. of Palm Beach Cnty.*, 806 F.3d 1070, 1074 (11th Cir. 2015) (citation omitted).

premised on purported protections they believe they have under the First Amendment will accordingly fail because the Free Speech Clause has no applicability to government speech. As with other identified issues, this difference in narrative underlying the Board's reasoning compels an evidentiary hearing.

### vii. B.G. Is Unlikely to Succeed on Count II

B.G. is unlikely to succeed on Count II, under the purported right to receive information. This is so because the case she relies on, *Pico*, "is of no precedential value as to the application of the First Amendment to these issues." *ACLU*, 557 F.3d at 1200 (quoting *Muir v. Ala. Educ. Tele. Comm'n*, 688 F.2d 1033, 1045 n.30 (5th Cir. 1982)). That is, "*Pico* is a non-decision so far as precedent is concerned. It establishes no standard." *Id.* Count II rests on "a badly fractured decision" that "failed to attract a majority," and in fact included "four dissenters, who were of the opinion that the First Amendment placed no limits on a school board's power to remove books from school libraries." *Id.* at 1199, 1200, 1202. Plaintiffs' Motion acknowledges the unsettled nature of this purported right. Motion at 16.

To the extent B.G. urges this Court to adopt *Pico*'s standard, prudential reasons counsel against it: "[w]ith five different opinions and no part of any of them gathering five votes from among the nine justices," *ACLU*, 557 F.3d at 1200, judicial restraint should be exercised. *See Digit. Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) ("Even when the constitutional minimum has been

met, however, prudential considerations may still counsel judicial restraint."
(citation omitted)). Here, given the "potential or abstract" nature of the purported
right to receive information, any decision this Court could render would be an
"impermissible advisory opinion[]." *Club Madonna, Inc. v. City of Miami Beach*, 924
F.3d 1370, 1379-80 (11th Cir. 2019) (quoting *Nat'l Adver. Co. v. City of Miami*, 402
F.3d 1335, 1339 (11th Cir. 2005)). Given this right is not formally recognized by
either the Supreme Court or the Eleventh Circuit, B.G. cannot clearly show a
likelihood of success, and therefore cannot meet her burden for a preliminary
injunction. *See Siegel*, 234 F.3d at 1176.

### viii.   Section 1001.42 Is Not Vague or Overly Broad

The Escambia County Defendants had no part in the drafting or passage of
H.B. 1557 or related legislation.[7] The Florida State Defendants are well represented
by the Office of the Attorney General. The Escambia County Defendants adopt
and incorporate the arguments in support of H.B. 1557's constitutionality raised
by the Florida State Defendants' Motion to Dismiss, [D.E. 54 at 23–24], as if fully
set forth herein, as to why Plaintiffs' vagueness and overbreadth claims will fail.

Moreover, although Plaintiffs claim to be bringing an as-applied challenge,
[D.E. 27 at 2], it is not at all clear that this is the case, as it is baseless to claim the

---

[7] "[S]tate statutes, like federal ones, are entitled to the presumption of constitutionality until their invalidity is judicially declared." *Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 153 (1944).

Escambia County Defendants somehow "vaguely" applied H.B. 1557 in removing *Tango*. The same applies to Plaintiffs' overbreadth challenge. The more likely conclusion is Plaintiffs seek to sidestep recent rulings by other district courts which have rejected vagueness and overbreadth challenges to H.B. 1557 because of similar deficiencies present in Plaintiffs' claims. *See, e.g., Cousins*, 636 F. Supp. 3d at 1380–81; *M.A. v. Fla. State Bd. of Educ.*, No. 4:22-cv-134-AW-MJF, 2023 WL 2631071, at *8 (N.D. Fla. Feb. 15, 2023). These previous failed attempts to attack H.B. 1557 show Plaintiffs are not likely to succeed on the merits.

### C. Plaintiffs Have Not Established Irreparable Harm

"A showing of irreparable injury is the sine qua non of injunctive relief." *Siegel*, 234 F.3d at 1176 (cleaned up). Even "if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Id.* "As [the Eleventh Circuit] ha[s] emphasized on many occasions, the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Id.* at 1176–77 (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)).

### i. Plaintiffs' Delay Is Cause for Their Motion to Be Denied

Plaintiffs' delay in seeking injunctive relief is grounds for finding a lack of irreparable harm. Plaintiffs claim the Escambia County Defendants committed "a

First Amendment violation of the highest magnitude" by removing *Tango* "in or before February 2023." Motion at 1–2. But the operative Complaint and instant Motion—the first papers naming the Escambia County Defendants—were not filed until late August 2023, more than six months after the alleged infliction of irreparable harm and only then after Plaintiffs suffered an adverse ruling in their effort to enjoin the Lake County Defendants. Moreover, B.G.'s alleged effort to check out *Tango* in March 2023, Motion at 9, forecloses any delayed discovery argument.[8] Plaintiffs' dilatory actions in naming the Escambia County Defendants is cause for their Motion to be denied. *See Cousins*, 636 F. Supp. 3d at 1382 ("[T]he Eleventh Circuit has clearly stated that such delays in seeking injunctive relief militate against a finding of irreparable harm." (citing *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016))); *see also Wreal, LLC*, 840 F.3d at 1248 (upholding district court's finding that the plaintiff's "unexplained five-month delay in seeking a preliminary injunction, by itself, fatally undermined any showing of irreparable injury"); *Tiber Labs., LLC v. Hawthorn Pharm., Inc.*, 527 F. Supp. 2d 1373, 1381 (N.D. Ga. 2007) ("Where the movant 'unduly delayed in

---

[8] Plaintiffs tacitly concede to this delay, Motion at 22 (claiming "Plaintiffs have been deprived of their First Amendment freedoms for more than six months and running"), despite being aware of the Board's actions, at the latest, two days after *Tango* was removed. *See* Brooke Leigh Howard, Florida School District Bans a Book on…Penguins, Daily Beast (Feb. 22, 2023), https://www.thedailybeast.com/and-tango-makes-three-florida-school-district-bans-a-book-on-penguins (containing statement by Plaintiff Richardson in response to *Tango*'s removal).

bringing suit,' however, 'thereby negating the idea of irreparability,' a preliminary injunction should not issue." (citation omitted)).

This is because "[a] preliminary injunction requires showing 'imminent' irreparable harm." *Wreal, LLC*, 840 F.3d at 1248. Plaintiffs have "failed to offer any explanation for [their] [six]-month delay," which cuts against "the very idea of a *preliminary* injunction [as it] is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* This Court should heed the Eleventh Circuit's guidance: "[f]or this reason, [other circuit courts and district courts] have found that a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id.* (collecting cases). Plaintiffs' claim for urgency only *after* adding the Escambia County Defendants is not persuasive. At minimum, these are the sort of bitterly disputed facts that necessitate an evidentiary hearing.

### ii. Plaintiffs Failed to Show Irreparable Harm

The Author Plaintiffs claim irreparable harm because since *Tango*'s removal, they "have been and continue to be unable to speak to their target audience." Motion at 2. B.G. claims irreparable harm because she "has been and will be unable to access information and ideas contained in *Tango*." *Id.* at 2–3. Neither of these claims passes muster. The Escambia County Defendants have done nothing to prohibit the Author Plaintiffs from *speaking* to their target audience: they have not

impaired their ability to write, sell, publish, market, or distribute *Tango* (or any other work). Although *Tango* is unavailable in the District's libraries, the Author Plaintiffs remain free to "speak" to their target audience by means of public libraries, bookstores, online retailers, etc. That the Escambia County Defendants must, *under pain of constitutional liability*, carry their book and never remove it lest the Board breach the First Amendment, strains credulity. Moreover, this goes to the credibility of the Author Plaintiffs, supporting an evidentiary hearing.

As for B.G., she remains free to access *Tango*; indeed, by attaching a copy of *Tango* to their Motion, [D.E. 62-5], and making it part of this matter's public record, Plaintiffs reveal B.G.'s continued ability to access this book, despite the Escambia County Defendants' alleged actions. B.G. has in no way been inhibited from accessing, reading, possessing, or even bringing *Tango* to school. That Plaintiffs claim on one hand B.G. cannot access the book while also proving they have access to it by uploading it as an exhibit is another credibility issue to be explored at an evidentiary hearing. Plaintiffs have failed to satisfy the sine qua non of injunctive relief, and thus their Motion is due to be denied. *See Siegel*, 234 F.3d at 1176.

### D. The Balance of Harms and Public Interest Do Not Favor Plaintiffs

"[W]hen, as here, 'the Government is the opposing party,'" "the balance-of-the-harms and public-interest factors . . . 'merge.'" *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The

Escambia County Defendants are "responsible for the content of all materials made available in a school library." § 1006.28(2)(a)1., Fla. Stat. (cleaned up). Enjoining them from carrying out their legal responsibilities outweighs any harm to Plaintiffs. *See People's Party of Fla. v. Fla. Dep't of State, Div. of Elections*, 608 F. Supp. 3d 1195, 1199 (M.D. Fla. 2022) ("The 'inability to enforce its duly enacted [laws] clearly inflicts irreparable harm on the State.'" (citation omitted)).

Moreover, the purpose of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully adjudicated. *Robinson v. Att'y Gen.*, 957 F.3d 1171, 1179 (11th Cir. 2020). Here, an injunction would disturb the status quo—as *Tango* has been unavailable for more than six months with no disruptions—and unnecessarily restrain the Escambia County Defendants' ability to comply with their legal duties. This is not in the public interest. The public's interest is best served by allowing its elected officials—such as the Board—to carry out their constitutional and legal duties uninhibited. Plaintiffs' Motion should be denied.

**WHEREFORE**, Defendants, Escambia County School Board and Keith Leonard, in his official and individual capacities, request that the Court deny Plaintiffs' Motion for Preliminary Injunction, and to enter any and all further relief this Court deems just and proper.

Respectfully submitted,

/s Nicole Sieb Smith
/s Jeffrey J. Grosholz
NICOLE SIEB SMITH
Florida Bar No.: 0017056
E-mail: nsmith@rumberger.com
J. DAVID MARSEY
Florida Bar No.: 0010212
E-mail: dmarsey@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.: 1018568
E-mail: jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel: 850.222.6550
Fax: 850.222.8783

Attorneys for Defendants Escambia County School Board and Keith Leonard

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 15, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Faith Elizabeth Gay at fgay@selendygay.com, Anna Theresa Neill at aneill@kmpa.com**, **Lauren J. Zimmerman at lzimmerman@selendygay.com**, **Masha Simonova at msimonova@selendygay.com, Nancy A. Fairbank at nfairbank@selenygay.com, Max H. Siegel at msiegel@selendygay.com, and William Jay Blechman at wblechman@kmpa.com (Counsel for Plaintiffs); Zachary Tyler Broome at**

zbroome@bowenschroth.com, James A. Myers at jmyers@bowenschroth.com (Counsel for Defendants School Board of Lake County and Kornegay); Daniel Bell at daniel.bell@myfloridalegal.com, Anita J. Patel at anita.patel@myfloridalegal.com, David Costello at david.costello@myfloridalegal.com, and Erik Sayler at eric.sayler@myfloridalegal.com (Counsel for Defendants Diaz, Gibson, Petty, Brown, Byrd, Christie, Garcia and Magar).

/s Nicole Sieb Smith
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

Attorneys for Defendants Escambia County School Board and Keith Leonard

18367345.v1