UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

PETER PARNELL ET AL.,

    *Plaintiffs*,

v.

SCHOOL BOARD OF LAKE COUNTY, FLORIDA ET AL.,

    *Defendants*.

Case No. 5:23-cv-00381

## STATE DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs—the authors of *And Tango Makes Three* and an Escambia County student by and through her parent—contend that restrictions on *Tango* in Escambia County's public-school libraries violate Plaintiffs' First Amendment rights by "strip[ping] the Authors of their right to speak to their audience" and "the Student Plaintiff of her right to access the information and ideas." DE62 at 2. Escambia County removed *Tango* from library shelves nearly seven months ago and was sued over that decision in the Northern District of Florida nearly four months ago. Yet Plaintiffs waited until August 25, 2023, to add the Escambia County Defendants and seek the extraordinary relief they now request—a preliminary injunction barring the Escambia County Defendants from exercising their discretion to "remove *Tango* from school library shelves." *Id.* at 1.

The motion must be denied because Plaintiffs have failed to demonstrate a likelihood of success on the merits. The government's exercise of discretion in the selection of school-library books is government speech, and when the government speaks, it may "regulate the content of . . . its own message," *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995), "including choosing not to speak and speaking through the removal of speech that the government disapproves," *Gundy v. City of Jacksonville*, 50 F.4th 60, 71 (11th Cir. 2022) (cleaned up). The choice of which message should be spoken in our schools is for democratically accountable governments, not courts or litigants.

## ARGUMENT

**I. PLAINTIFFS HAVE FAILED TO ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS.**

**1.** The Author Plaintiffs claim a "right to speak to their audience"—Escambia County schoolchildren—through Escambia County's public-school libraries. DE62 at 2. That is wrong because Florida's public-school libraries are a forum for government speech, not private speech. And when the government speaks, it "can freely select the views that it wants to express, including choosing not to speak and speaking through the removal of speech that the government disapproves." *Gundy*, 50 F.4th at 71 (quotations omitted).

Although the Eleventh Circuit has not yet addressed whether the government's "book collection (and book removal) decisions" for school libraries are "government speech," *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1201 (11th Cir.

2009),[1] the Supreme Court and Eleventh Circuit have repeatedly held that the government's authority to "regulate the content of . . . its own message," *Rosenberger*, 515 U.S. at 833, includes the discretion to select materials and content for compilation and presentation to citizens, be it a government parade,[2] a broadcasted debate,[3] a state-university commencement,[4] or a state-sponsored art gallery.[5] In *Pleasant Grove City v. Summum*, for example, the Supreme Court held that the selection of monuments for a public park was government speech, even when the monuments were funded or donated by private parties. 555 U.S. 460, 470–73 (2009). "Government decisionmakers select[ed] the monuments that portray[ed] what they view[ed] as appropriate for the place in question, taking into account such content-based factors as esthetics, history, and local culture." *Id.* at 472. Accordingly, the "decision to accept certain privately donated monuments while rejecting respondent's" was "government speech," and the government was not required to "maintain viewpoint neutrality" in making that decision. *Id.* at 479, 481.

---

[1] In *Miami-Dade County School Board*, the court had no occasion to decide that question because the plaintiffs lost even under the "standard . . . of their dreams"—"the standard that failed to attract a majority in the *Pico* case." 557 F.3d at 1202 (citing *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 872 (1982) (plurality op.)).

[2] *See Leake v. Drinkard*, 14 F.4th 1242, 1253 (11th Cir. 2021).

[3] *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (1998).

[4] *Id.*

[5] *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 586 (1998).

Plaintiffs assert that public-school libraries are, at a minimum "a nonpublic forum," DE62 at 11, for private speech, but that is not so. Like the other compilations noted above, the materials made available in a government-operated library are "neither a 'traditional' nor a 'designated' public forum" in which individuals have a cognizable First Amendment interest. *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 205 (2003) (plurality op.). That is, "a public library's purpose for acquiring" materials is "to provide its patrons with materials of requisite and appropriate quality, not to create a public forum for [private parties] to express themselves." *Id.* at 209 n.4. It is thus not incumbent upon public libraries to "provide universal coverage" of topics, much less to "provide books" of "interest" to "all [the] people of the community the library serves." *Id.* at 203–04 (cleaned up). "Instead, public libraries seek to provide materials 'that would be of the greatest direct benefit or interest to the community,'" and "[t]o fulfill their traditional missions, [they] must have broad discretion to decide what material to provide to their patrons." *Id.* at 204. In other words, "the government speaks through its selection of which books to put on the shelves and which books to exclude." *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005). That selection reflects the *government's* view about what materials have the "requisite and appropriate quality." *Am. Libr. Ass'n*, 539 U.S. at 204, 206 (plurality op.) (citations omitted); *see also Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008) (Kavanaugh, J., concurring) (the government speaks when it "compil[es]" the "speech of third parties" in a public library). And because compiling library materials is government speech, the First Amendment does not bar the government from curating those

4

materials based on content and viewpoint. *See Gittens*, 414 F.3d at 29; *Am. Libr. Ass'n*, 539 U.S. at 204–05 (plurality op.). Nor does any type of forum-analysis apply. *See Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215 (2015).

That principle applies with even more force in public-*school* libraries, the purpose of which is to support the government's educational mission by "providing materials that properly supplement the basic readings assigned through the standard curriculum." *Zykan v. Warsaw Cmty. Sch. Corp.*, 631 F.2d 1300, 1308 (7th Cir. 1980). In curating a school library, the government decides which books have the "requisite and appropriate quality" to bolster student development. *Am. Libr. Ass'n*, 539 U.S. at 204 (plurality op.) (citation omitted). "Absurd results would follow," *Dean v. Warren*, 12 F.4th 1248, 1266 (11th Cir. 2021), if private parties could hijack the government's message by forcing their preferred books onto school-library shelves, *see Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Bos., Inc.*, 515 U.S. 557, 572–73 (1995) (parade organizers not required to include voices they wished to exclude); *Leake*, 14 F.4th at 1253 (same for government parade organizer). Forcing the government "to speak" in a school library "what [it] do[es] not believe on pain of" lawsuit, *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2314 (2023), would put policy decisions about what to teach in schools in the hands of litigants rather than elected representatives. "Indeed, it is not easy to imagine how government could function if it lacked this freedom." *Summum*, 555 U.S. at 468.

Florida law confirms that the State's public-school libraries are not fora for private speech. "Each book made available to students through a school district library . . . must be selected by a school district employee . . . , regardless of whether the book is purchased, donated, or otherwise made available to students." Fla. Stat. § 1006.28(2)(d)1. And "[e]ach district school board" must "adopt procedures for developing library . . . collections" to "support . . . state academic standards and aligned curriculum, and the academic needs of students and faculty." *Id.* § 1006.28(2)(d)2.c. Because school officials "always select[ ]" their library materials and "maintain[ ] direct control" of them, *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1592 (2022) (citing *Summum*, 555 U.S. at 472–473, and *Walker*, 576 U.S. at 213), Plaintiffs have no right to select the materials themselves.

**2.** The Student Plaintiff is just as wrong in claiming that "the removal of *Tango* infringes upon [her] corollary 'right to receive information and ideas.'" DE62 at 15 (citing *Pico*, 457 U.S. at 866–67 (plurality op.)). The government has no constitutional obligation to present educational material with which it disagrees. Because a "listener's right to receive information is reciprocal to the speaker's right to speak," *Doe ex rel. Doe v. Governor of N.J.*, 783 F.3d 150, 155 (3d Cir. 2015), that right cannot be deployed to interfere with the government's own message. Students certainly have no more right to control what the government puts in its libraries than they do to control the content of a school cheer, *see Dean*, 12 F.4th at 1265–66 (cheerleading is government speech), or the message they communicate while participating in a training

practicum, *see Keeton v. Anderson-Wiley*, 664 F.3d 865, 877 (11th Cir. 2011) (same for school practica).

Despite acknowledging that "Eleventh Circuit law is unsettled as to . . . claims in school library book removal cases," DE62 at 16 (citing *Miami-Dade Cnty. Sch. Bd.*, 557 F.3d at 1202), Plaintiffs do not discuss the government-speech doctrine at all. Instead, they point to *Board of Education v. Pico*, in which a plurality of the Supreme Court concluded that school-library materials may not be selected "in a narrowly partisan or political manner." 457 U.S. at 870 (plurality op.). But the Eleventh Circuit has recognized that *Pico* was "a badly fractured decision" that is "of no precedential value as to the application of the First Amendment to these issues" and "establishes no standard." *Miami-Dade Cnty. Sch. Bd.*, 557 F.3d at 1199–1200 (quotations omitted). In addition, *Pico* predates the Supreme Court's government-speech cases, which have since established principles that—as Justice Rehnquist observed in his dissent—would have required a different result in that case. *See* 457 U.S. at 920 (Rehnquist, J., dissenting) ("[T]he Court will far better serve the cause of First Amendment jurisprudence by candidly recognizing that the role of government as sovereign is subject to [stricter] limitations than [its] role" as "educator.").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

ASHLEY MOODY
  *Attorney General*
HENRY C. WHITAKER (FBN 1031175)
  *Solicitor General*
DANIEL W. BELL (FBN 1008587)
  *Chief Deputy Solicitor General*

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
*david.costello@myfloridalegal.com*

*/s/ David M. Costello*
DAVID M. COSTELLO (FBN 1004952)
  *Deputy Solicitor General*

*Counsel for the State Defendants*

**CERTIFICATE OF SERVICE**

On this 15th day of September, 2023, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

*/s/ David M. Costello*
Deputy Solicitor General